[No. S104487. Feb. 3, 2003.]

THE PEOPLE, Plaintiff and Respondent, v.
SENECA INSURANCE COMPANY, Defendant and Appellant.

## COUNSEL

Nunez & Bernstein and E. Alan Nunez for Defendant and Appellant.

Steve Cooley, District Attorney, Brent Riggs and Fred Klink, Deputy District Attorneys, for Plaintiff and Respondent.

Kathleen Bales-Lange, County Counsel (Tulare) and Lawrence A. Perkes, Deputy County Counsel, for California State Association of Counties as Amicus Curiae on behalf of Plaintiff and Respondent.

## OPINION

**BROWN, J.**—In this case, we decide whether Penal Code[1] section 1166, which governs release of a convicted defendant on bail pending sentencing, applies in the case of a conviction by guilty plea. We conclude that section 1166 does not apply in this context. Accordingly, we reverse the judgment of the Court of Appeal.

### FACTUAL AND PROCEDURAL BACKGROUND

A criminal complaint filed on July 30, 1999, charged Seung Hyun Noh (Noh) with seven counts of receiving stolen property. (§ 496, subd. (a).) On September 11, 1999, Seneca Insurance Company (Seneca) posted a bail bond to secure Noh's release from custody. The bond provided that Noh would "appear . . . to answer any [charge] in any accusatory pleading based upon the acts supporting the complaint filed against him . . . *and if convicted, [would] appear for pronouncement of judgment or grant of probation*," or if Noh failed to appear, Seneca would pay $70,000 to the State of California. On May 23, 2000, Noh entered a guilty plea on five of the seven charged counts. The court ordered Noh to appear on June 21, 2000, for sentencing and permitted him to remain free on bail. Noh failed to appear for sentencing, and the court issued a bench warrant and ordered Seneca's bail bond forfeited.

On November 15, 2000, Seneca moved to vacate forfeiture and exonerate bail. Seneca argued that, after Noh entered his guilty plea, the trial court should have proceeded in accordance with section 1166 before permitting Noh to remain free on bail. Seneca further asserted that section 1166 required the court to conduct an evidentiary hearing and make findings of fact with respect to five considerations, including public safety and the probability of Noh's failing to appear for judgment. Seneca argued the court's failure to comply with section 1166 was a jurisdictional error that exonerated bail by operation of law. In other words, because the court failed to follow the procedures set forth in section 1166—procedures that might have led the court to commit Noh to custody following his plea—Seneca contended it should not be held responsible for Noh's failure to appear. In opposition, the People claimed Seneca's reliance on section 1166 was misplaced because the statute governs only bail following a "verdict" in a contested trial and has no application to bail following a plea of guilty.

On December 13, 2000, after hearing argument and considering the legislative history of section 1166, the trial court denied Seneca's motion to

---

[1] All further statutory references are to the Penal Code.

vacate forfeiture and exonerate bail. Seneca appealed from that order (see *People v. Wilcox* (1960) 53 Cal.2d 651, 655 [2 Cal.Rptr. 754, 349 P.2d 522, 78 A.L.R.2d 1174]), and the Court of Appeal reversed. We granted the People's petition for review. We conclude that section 1166 does not apply where conviction is by guilty plea, and therefore Seneca's argument based on section 1166 fails. We do not decide whether a trial court's failure to comply with section 1166 in a case where that provision does apply would have the effect of exonerating bail by operation of law, nor do we decide whether compliance with section 1166 requires an evidentiary hearing with formal findings of fact.

## DISCUSSION

Section 1166, as amended in 1999, provides: "*If a general verdict is rendered against the defendant, or a special verdict is given,* he or she must be remanded, if in custody, or if on bail he or she shall be committed to the proper officer of the county to await the judgment of the court upon the verdict, unless, upon considering [1] the protection of the public, [2] the seriousness of the offense charged and proven, [3] the previous criminal record of the defendant, [4] the probability of the defendant failing to appear for the judgment of the court upon the verdict, and [5] public safety, the court concludes the evidence supports its decision to allow the defendant to remain out on bail. When committed, his or her bail is exonerated, or if money is deposited instead of bail it must be refunded to the defendant or to the person or persons found by the court to have deposited said money on behalf of said defendant." (Italics added.) Prior to the 1999 amendment, section 1166 stated only that, after conviction by verdict, an on-bail defendant "*may be* committed to the proper officer of the county." (Stats. 1935, ch. 657, § 5, p. 1814, italics added.) Thus, the former version of section 1166 gave the trial court unguided discretion as to whether to commit an on-bail defendant to custody or permit him or her to remain free. The 1999 amendment, however, *requires* the court to commit the defendant to custody unless, after considering five factors, the court concludes the evidence supports a decision to release the defendant on bail.

In general, a person is convicted *either* by verdict *or* by guilty plea, and the term "verdict" refers to a *jury verdict*. A finding of guilt in a criminal case is made only "by verdict of a jury, . . . by a finding of the court in a case where a jury has been waived, *or* by a plea of guilty" (§ 689, italics added), and a court's finding "shall be in substantially the form prescribed for the general verdict of a jury" (§ 1167). Section 1166 states that the section applies only to proceedings after a trial and *verdict*, not proceedings involving a guilty plea. The section makes no express reference to guilty

pleas; nor does it use a broad term, such as "conviction," that would more clearly encompass both guilty pleas and verdicts. Rather, the statute refers only to "general verdict[s]" and "special verdict[s]." (§ 1166.) In the same chapter of the Penal Code, the Legislature explains these terms: "The *jury* must render a general verdict, except that in a felony case, when they are in doubt as to the legal effect of the facts proved, they may, except upon a trial for libel, find a special verdict." (§ 1150, italics added.) "A general verdict *upon a plea of not guilty* is either 'guilty' or 'not guilty,' which imports a conviction or acquittal of the offense charged in the accusatory pleading." (§ 1151, italics added.) "A special verdict is that by which the *jury* find[s] the facts only, leaving the judgment to the Court." (§ 1152, italics added.) These specific descriptions of general and special verdicts simply do not encompass guilty pleas; rather, they refer to the findings of fact after a contested trial. Moreover, the organization of the Penal Code and the placement of section 1166 within that code strongly suggest that section 1166 does not apply in the case of a guilty plea.

Part 2 of the Penal Code, which begins at section 681, relates to criminal procedure. The statutes proceed in a logical, consecutive fashion through the stages of a typical criminal case, starting with the indictment (§ 940 et seq.) and then addressing pleadings (§ 948 et seq.), arraignment (§ 976 et seq.), pretrial matters (§ 995 et seq.), plea (§ 1016 et seq.), trial (§ 1065 et seq.), verdict (§ 1147 et seq.), sentencing (§ 1170 et seq.), judgment (§ 1191 et seq.), and appeals (§ 1235 et seq.). The provisions governing Noh's guilty plea appear in part 2, title 6, which relates to pretrial matters. In contrast, section 1166 appears in part 2, *title 7*, which relates to matters that arise after the start of trial and before judgment. Within title 7, chapter 1 governs challenges to the jury, chapter 2 governs the trial itself, chapter 3 governs the conduct of the jury after the cause is submitted to them, and chapter 4—which includes section 1166—governs the jury's verdict or findings. Chapter 4 first addresses the two types of verdict, general and special (§ 1150 et seq.), and explains what the trial court should do in the case of an ambiguous verdict (§§ 1161, 1162) or an acquittal (§ 1165). Then, in section 1166, chapter 4 describes what the court should do when the jury returns a "verdict . . . against the defendant."

This context clearly indicates that section 1166 refers to proceedings following a contested trial and verdict. When the drafters of the Penal Code reached the chapter in which section 1166 appears, they simply were not talking about pleas—they were talking about posttrial verdicts—and we would need to distort the logical structure of the Penal Code to relate section 1166 to pleas. Moreover, section 1166 works in tandem with section 1129, which appears in chapter 2 of the same title. Under section 1129, a trial court

"*may*, in its discretion," commit an on-bail defendant to custody "at any time after his appearance for trial." (Italics added.) Under section 1166, that discretion becomes a presumption once the jury renders a verdict against the defendant; the court, then, *must* commit the defendant to custody, unless it finds the statute's five-part test satisfied. Viewed together, sections 1129 and 1166 have little to do with guilty pleas; they have to do with an on-bail defendant's custody status after the defendant appears for trial and before judgment.

From its context, section 1166 clearly relates to convictions by verdict, not guilty pleas. Seneca, however, argues that section 1166 is ambiguous because of the frequency with which criminal cases are now resolved by guilty plea. Seneca reasons that, with so many cases resulting in guilty pleas and comparatively few cases reaching the verdict stage, the Legislature could not reasonably have enacted a provision governing custody following a verdict and not have enacted a comparable provision governing custody following a guilty plea.

The gap that Seneca identifies in the statutory scheme may be because the Penal Code was first enacted at a time when guilty pleas were less common than they are today. Nevertheless, as early as 1930, the Court of Appeal held that, despite the absence of a specific statute on point, trial courts may in their discretion allow an on-bail defendant who pleads guilty to remain free on bail pending sentencing and judgment. In *People v. Fidelity & Deposit Co.* (1930) 107 Cal.App. 160 [290 P. 59] (*Fidelity*), the court found this discretion implicit in section 1278, which sets forth the statutory form for bail bonds. This form requires the surety to undertake, among other things, that the defendant "if convicted, will appear for pronouncement of judgment or grant of probation." (§ 1278.) The *Fidelity* court concluded, from the text of this form, that the Legislature must have contemplated the possibility of defendants sometimes remaining free on bail following conviction, and that conviction in this context might include conviction by way of guilty plea. (*Fidelity*, at p. 163.) In support of its conclusion, the court also noted other Penal Code provisions, including section 1166, that contemplate a convicted defendant remaining free on bail pending judgment. (*Fidelity*, at p. 164.) Seneca is therefore correct that the Penal Code does not expressly address release on bail following a guilty plea, but in light of the holding in *Fidelity*, the Legislature may have concluded that no specific statute was needed.

Both Seneca and the dissent interpret *Fidelity* as expressly holding that guilty pleas fall within the scope of section 1166. They also cite *People v. Scott* (1960) 184 Cal.App.2d 792 [7 Cal.Rptr. 755], in which the court found section 1166 applicable to a case involving conviction *by a judge* at a bench

trial. They reason from these cases that courts have historically understood section 1166 to encompass *all* convictions, and that only now, after the 1999 amendment limited trial court discretion under section 1166, are the People attempting to give it a narrower scope. (See dis. opn., *post*, at pp. 970-973.)

We agree that the 1999 amendment to section 1166 gave new significance to the issue presented here, but we do not think section 1166 has historically applied to guilty pleas. The *Fidelity* court did not hold that guilty pleas fall within the scope of section 1166, and that holding would have made little sense in light of the plain language of section 1166 and its placement in the chapter of the Penal Code governing verdicts. Instead, the *Fidelity* court cited section 1166 as an example of an analogous situation in which a convicted defendant remains free on bail pending sentencing and judgment. We think Seneca and the dissent err in reading the *Fidelity* decision more broadly. As for *People v. Scott, supra*, 184 Cal.App.2d 792, we find no suggestion in that opinion that section 1166 applies to a case involving a guilty plea, and we have no reason to decide here whether the court was correct to apply section 1166 to a case involving a bench trial instead of a jury trial.

The Court of Appeal found section 1166 to be ambiguous, warranting consideration of legislative history, because a guilty plea is generally equivalent to a guilty verdict. The court reasoned, in light of this general equivalence, that "the absence of any reference to guilty pleas in section 1166 creates an ambiguity." We find no ambiguity when the context of the statute is considered. The absence of any reference to guilty pleas in section 1166 merely reflects that section's placement in the Penal Code chapter governing verdicts, not pleas. Of course, a defendant can plead guilty after a trial has begun, but the logical place in the Penal Code for the Legislature to have addressed release on bail following a guilty plea is in the section governing pleas, not in the section governing the jury's verdict at the close of trial. Hence, we see no ambiguity inherent in the Legislature's failing to discuss guilty pleas in section 1166.

Moreover, the equivalence of guilty pleas and guilty verdicts relates to their *legal effect*, and our statements finding them to be equivalent are therefore contextual. (See, e.g., *People v. Valladoli* (1996) 13 Cal.4th 590, 601 [54 Cal.Rptr.2d 695, 918 P.2d 999] (*Valladoli*).) Here, we are more concerned with procedure than substantive legal effect, and procedurally, a guilty plea is quite different from a guilty verdict. In the case of a guilty plea, for example, the defendant accepts responsibility for his crime, often in hopes of minimizing his or her punishment. The Legislature may have concluded that, in that circumstance, where the defendant may be cooperating at least to some extent with prosecutorial authorities, he or she is less

likely to pose a flight risk or a danger to public safety. Though, as this case attests, some defendants plead guilty and then fail to appear for sentencing and judgment—and therefore the Legislature might reasonably have opted to extend the procedures set forth in section 1166 to defendants who plead guilty—many defendants who plead guilty manifest a desire to resolve the matter on relatively favorable terms, and the Legislature may have reasoned that these defendants would not want to jeopardize that favorable resolution by committing new crimes or failing to appear. In short, the distinction the Legislature drew between guilty pleas and convictions by verdict is not completely baseless, and we reject Seneca's argument that section 1166 must apply to guilty pleas in order to avoid absurd results.

In addition, as a practical matter, the disparate treatment of persons who plead guilty as compared to persons convicted by verdict is not as pronounced as Seneca suggests. The factors listed in section 1166 replicate, almost verbatim, the factors that apply, under section 1275, subdivision (a), when a judge or magistrate initially sets bail, and in fact, the Legislature appears to have modeled the 1999 amendment to section 1166 on section 1275, subdivision (a). Specifically, section 1275, subdivision (a), provides: "In setting, reducing, or denying bail, the judge or magistrate shall take into consideration [1] the protection of the public, [2] the seriousness of the offense charged, [3] the previous criminal record of the defendant, and [4] the probability of his or her appearing at trial or hearing of the case. [5] The public safety shall be the primary consideration." Therefore, in the case of *all* on-bail defendants, including an on-bail defendant who pleads guilty, the factors listed in section 1166 were already considered at the time bail was initially set, and they were found to weigh in favor of release. The only new factor after the defendant pleads guilty is the fact of the conviction itself, and it is *that* factor, considered in light of the others, that the court must evaluate when deciding whether the defendant should remain free on bail. But section 1166 does not have to apply in order for a court to take the defendant's conviction into account when exercising its discretion.

The dissent asserts, based in large part on our holding in *People v. Statum* (2002) 28 Cal.4th 682 [122 Cal.Rptr.2d 572, 50 P.3d 355] (*Statum*), that the term "verdict" in statutes governing criminal procedure encompasses convictions by guilty plea. (See dis. opn., *post*, at pp. 965-966.) ■ In *Statum*, we recently concluded that a trial court's order reducing a felony conviction to a misdemeanor is an "order modifying *the verdict*" for purposes of appeal under section 1238, subdivision (a)(6), even if the conviction is by way of a guilty plea, not a trial, and therefore no jury verdict is at issue. (*Statum*, at p. 688, italics added.) We reaffirmed in this regard that a guilty plea is the legal equivalent of a verdict, citing *Valladoli*, *supra*, 13 Cal.4th 590. (*Statum*, at p. 688, fn. 2.)

We concede that, in many contexts, a guilty plea is not different from a guilty verdict, and where the procedural distinctions between guilty pleas and guilty verdicts are not legally significant, the Legislature might use the term "verdict" broadly to include guilty pleas. But, as discussed, we can think of several plausible reasons why the Legislature might treat a guilty plea differently from a guilty verdict for purposes of custody status pending judgment. Therefore, we must assume in that context that the Legislature chose its words carefully and intended a special rule to apply in the case of a guilty verdict after a contested trial, because otherwise we would nullify the presumptively intentional distinction the Legislature drew.

Moreover, unlike section 1166, the statute that was at issue in *Statum* (§ 1238, subd. (a)(6)) does not fall in a chapter of the Penal Code that (1) specifically focuses on the verdict or finding after a contested trial and addresses no other subjects; (2) carefully delineates the various types of verdict a jury might render after completing its deliberations (§§ 1150, 1151, 1152, 1153, 1154, 1158, 1158a, 1160); and then (3) describes what should follow in the case of each type of jury verdict (§§ 1155, 1156, 1157, 1161, 1162, 1163, 1164, 1165, 1166, 1168), expressly distinguishing jury verdicts from other ways a defendant might be convicted, such as findings by the court. (§§ 1165, 1167.) While the use of the term "verdict" in other places in the Penal Code might suggest a broad interpretation that would reasonably include guilty pleas, its use in the context of part 2, title 7, chapter 4 of that code can only reasonably mean one thing: a verdict given at the conclusion of a contested trial.

The Court of Appeal also relied on the oft-repeated rule that, because the law disfavors forfeitures, courts interpret bail forfeiture laws in favor of the surety. (See, e.g., *People v. United Bonding Ins. Co.* (1971) 5 Cal.3d 898, 906 [98 Cal.Rptr. 57, 489 P.2d 1385]; *People v. Ranger Ins. Co.* (1992) 9 Cal.App.4th 1302, 1305 [12 Cal.Rptr.2d 343]; *County of Los Angeles v. Surety Ins. Co.* (1984) 162 Cal.App.3d 58, 62 [208 Cal.Rptr. 263]; *People v. Surety Ins. Co.* (1982) 136 Cal.App.3d 556, 561 [186 Cal.Rptr. 385].) Here, however, we are not construing a bail forfeiture law; we are construing a rule of criminal procedure governing release on bail after a verdict. Seneca contends that failure to comply with this rule of criminal procedure has the effect of exonerating bail, but we do not decide that issue. The rule of interpretation on which the Court of Appeal relied simply does not apply here.

In conclusion, we find no ambiguity in section 1166 in light of the context in which the provision appears. To concede that meaning must be determined from context does not indicate that a provision is ambiguous. Many

words have a wide range of possible meanings, but context eliminates that ambiguity, leaving the intended meaning clear. That is the case here. Section 1166 governs proceedings following a trial verdict; it does not govern guilty pleas. Accordingly, we need not consider legislative history. (See, e.g., *Diamond Multimedia Systems, Inc. v. Superior Court* (1999) 19 Cal.4th 1036, 1055 [80 Cal.Rptr.2d 828, 968 P.2d 539].)

But even were resort to legislative history justified, we must be careful not to misuse it. It is notoriously easy to support any number of conflicting propositions by selectively quoting legislative history. To be persuasive, such an exercise must offer something more compelling than, as one critical jurist describes it, " 'looking over a crowd and picking out your friends.' " (Wald, *Some Observations on the Use of Legislative History in the 1981 Supreme Court Term* (1983) 68 Iowa L.Rev. 195, quoting a conversation with Judge Harold Leventhal.) But this pick-out-your-friends strategy is the best the dissent offers. The two obscure references to guilty pleas on which the dissent relies (see dis. opn., *post*, at pp. 967-968) occur on page 4 of two nearly identical committee reports, in a section of the reports quoting background provided by the bill's author. Moreover, these two reports are among a collection of nearly a dozen that otherwise make no mention of guilty pleas, and several of the reports, *including the two the dissent relies on*, describe the scope of section 1166 as applying to defendants "convicted after a trial" or "found guilty after trial." (See, e.g., Assem. Com. on Public Safety, Analysis of Assem. Bill No. 476 (Reg. Sess. 1999-2000) Mar. 23, 1999, p. 1; Assem. Republican Com. on Public Safety, Analysis of Assem. Bill No. 476 (Reg. Sess. 1999-2000) as amended Aug. 17, 1999, p. 1; Sen. Com. on Public Safety, Analysis of Assem. Bill No. 476 (Reg. Sess. 1999-2000) as amended July 13, 1999, p. 2; Sen. Rules Com., Off. of Sen. Floor Analyses, Rep. on Assem. Bill No. 476 (Reg. Sess. 1999-2000) as amended Aug. 17, 1999, p. 2.) Therefore, the only significance of the legislative history is that it is inconclusive.

The dissent complains that interpreting the statute as we do is bad public policy because the bail requests of those defendants who plead guilty will not be subject to the requirements of section 1166. We are not prepared to say, as the dissent does (dis. opn., *post*, at pp. 974-976), that judicial discretion in this context is bad policy.

Accordingly, we conclude section 1166 does not apply where the defendant's conviction is by guilty plea. Because section 1166 does not apply, Seneca's arguments—that the trial court should have proceeded in accordance with that section and that its failure to do so exonerated bail as a matter of law—are without merit. Seneca's bail bond constitutes a contract

with the State of California. (See *Fidelity, supra,* 107 Cal.App. at p. 164.) Pursuant to that contract, Seneca expressly guaranteed Noh's appearance at judgment following conviction, and in the event Noh failed to appear, Seneca promised to pay $70,000. Nothing in section 1166 abrogates Seneca's contractual obligation. The trial court had discretion to allow Noh to remain free on bail pending sentencing, and it acted in accordance with that discretion.

## CONCLUSION

The Court of Appeal erred in finding section 1166 applicable where a defendant's conviction is based on a guilty plea rather than a verdict. Accordingly, we reverse the judgment of the Court of Appeal and remand with instructions to affirm the trial court's order denying Seneca's motion to vacate forfeiture and exonerate bail.

George, C. J., Kennard, J., Baxter, J., Werdegar, J., and Moreno, J., concurred.

**CHIN, J.,** Dissenting.—In 1999, the Legislature amended Penal Code section 1166[1] to increase public protection by *requiring* a court to commit a defendant to custody upon conviction and before judgment unless, after considering specified factors, the court finds that the evidence supports a decision to release the defendant on bail. (Stats. 1999, ch. 570, § 1.) The majority holds that the increased public protection the Legislature sought to provide through this amendment does not apply to the great majority of defendants who are convicted—those who plead guilty. Moreover, the majority's rationale—that section 1166's use of the term "verdict" refers only to jury verdicts—necessarily renders this increased protection also inapplicable to defendants convicted by court findings after nonjury trials.

The majority's analysis is flawed and its conclusion is contrary to the Legislature's intent. In reaching its conclusion, the majority does not maintain that the statute's plain meaning requires us to construe section 1166 so as to render its increased protection inapplicable to the great majority of convicted defendants. On the contrary, the majority concedes that the statutory language is ambiguous and that the term "verdict" sometimes encompasses guilty pleas. Instead, focusing on a single extrinsic aid—statutory context—the majority asserts that the only reasonable construction of section 1166 excludes defendants who are not convicted by jury verdict. In my view, other extrinsic aids that the majority virtually ignores are far more illuminating and compel the conclusion that the Legislature both understood and

[1]All further statutory references are to the Penal Code.

intended that section 1166's increased protection would apply in *all* cases where the defendant is convicted, whether by jury verdict, court finding, *or guilty plea.* This construction best serves the public policy the Legislature has declared in section 1166, whereas the majority's construction defeats that public policy in the great majority of cases. I therefore dissent.

I. *The Language of Section 1166 Can Be Reasonably Construed to Apply to Convictions by Guilty Plea.*

"[I]n any case involving statutory interpretation, our fundamental task . . . is to determine the Legislature's intent so as to effectuate the law's purpose. [Citation.] We begin by examining the statute's words, giving them a plain and commonsense meaning. [Citation.]" (*People v. Murphy* (2001) 25 Cal.4th 136, 142 [105 Cal.Rptr.2d 387, 19 P.3d 1129].) Where statutory language is clear and unambiguous—i.e., it has only one reasonable construction—judicial construction is generally unnecessary. (*Hughes v. Board of Architectural Examiners* (1998) 17 Cal.4th 763, 775 [72 Cal.Rptr.2d 624, 952 P.2d 641] (*Hughes*); *People v. Moroney* (1944) 24 Cal.2d 638, 642 [150 P.2d 888].) However, where a statute is ambiguous—i.e., it has more than one possible construction that is reasonable—we consider extrinsic evidence of the Legislature's intent beyond the statute's words. (*Hughes, supra,* at p. 776.)

Section 1166 has more than one reasonable construction, and is therefore ambiguous. Given the statute's use of the term "verdict," the majority's construction of section 1166—that it applies only to jury verdicts—is arguably reasonable. However, under a long line of California cases, the term "verdict" can also be reasonably construed as encompassing guilty pleas. In *People v. Statum* (2002) 28 Cal.4th 682, 685-686 [122 Cal.Rptr.2d 572, 50 P.3d 355] (*Statum*), we recently held that section 1238, subdivision (a)(6), authorizes the People to appeal where a defendant *pleads guilty* to a felony charge and the trial court later reduces the conviction to a misdemeanor and imposes a jail sentence. Section 1238, subdivision (a)(6), provides that the People may appeal from "[a]n order modifying *the verdict* or finding by reducing the degree of the offense or the punishment imposed or modifying the offense to a lesser offense." (Italics added.) In finding this section applicable, we concluded in *Statum* that the reduction of a defendant's conviction *by guilty plea* is an " 'order modifying *the verdict* . . . by . . . modifying the offense to a lesser offense.' " (*Statum, supra,* at p. 688, italics added.) We based this conclusion on the principle that "[a] guilty plea is the 'legal equivalent' of a 'verdict' [citation] . . . ." (*Id.* at p. 688, fn. 2.) Thus, we held in *Statum* that a Penal Code statute's use of the term "verdict" rendered the statute *applicable* to convictions by guilty plea, not, as the

majority here concludes, inapplicable. Our Courts of Appeal have similarly construed the term "verdict" in section 1238 since 1962, 45 years before we decided *Statum*. (*People v. Eberhardt* (1986) 186 Cal.App.3d 1112, 1119-1124 [231 Cal.Rptr. 387]; *People v. Hames* (1985) 172 Cal.App.3d 1238 [218 Cal.Rptr. 701]; *People v. Gaines* (1980) 112 Cal.App.3d 508, 514 [169 Cal.Rptr. 381] [statute applies because guilty plea is "tantamount to a verdict"]; *People v. Thatcher* (1967) 255 Cal.App.2d 830, 831-832 [63 Cal.Rptr. 492]; *People v. Orrante* (1962) 201 Cal.App.2d 553, 557, fn. 1 [20 Cal.Rptr. 480] [statute applies because "[a] plea of guilty is the equivalent of a verdict of a jury"].) Thus, the language of section 1166 is ambiguous because it has more than one reasonable construction.

Notably, the majority expressly concedes that the language of section 1166 is ambiguous. After discussing *Statum*, the majority states: "We concede that, in many contexts, a guilty plea is not different from a guilty verdict . . . ." (Maj. opn., *ante*, at p. 962.) The majority also states that the term "verdict" in other Penal Code provisions may be "reasonably" construed to "include guilty pleas." (*Ibid.*) The majority also implicitly concedes the statute's ambiguity by concluding that section 1166 has only one reasonable construction when viewed in its statutory "context" (maj. opn., *ante*, at pp. 958-959, 960, 963, 962), i.e., its "placement" within the Penal Code. (Maj. opn., *ante*, at p. 958.) A statute's placement within "the statutory scheme" is one of the "extrinsic aids" we look to only *after* concluding that the statute "is ambiguous . . . ." (*Hughes, supra*, 17 Cal.4th at p. 776; see also *Levy v. Superior Court* (1995) 10 Cal.4th 578, 582 [41 Cal.Rptr.2d 878, 896 P.2d 171] ["[w]hen the words are susceptible to more than one reasonable interpretation, we consider a variety of extrinsic aids, including the statutory context"]; *People v. Jefferson* (1999) 21 Cal.4th 86, 94 [86 Cal.Rptr.2d 893, 980 P.2d 441] ["[w]hen the statutory language is ambiguous," courts consider a variety of extrinsic aids, including "the context in which the language appears"].) Thus, by basing its construction on section 1166's placement within the Penal Code, the majority implicitly concedes that the statute's language is ambiguous.

II. *Extrinsic Aids Establish That the Legislature Both Understood and Intended That Section 1166 Would Apply to Convictions by Guilty Plea.*

Because the statutory language is ambiguous, we may properly look to "a variety of extrinsic aids" to determine the Legislature's intent. (*People v. Woodhead* (1987) 43 Cal.3d 1002, 1008 [239 Cal.Rptr. 656, 741 P.2d 154].) As noted, the statute's placement within "the statutory scheme" is one of those aids. (*Ibid.*) We also consider a number of other factors, "including the

ostensible objects to be achieved, the evils to be remedied, the legislative history, [and] public policy." (*Ibid.*) "Using these extrinsic aids, we 'select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences.' [Citation.]" (*People v. Sinohui* (2002) 28 Cal.4th 205, 212 [120 Cal.Rptr.2d 783, 47 P.3d 629].) Here, the relevant extrinsic aids demonstrate that the Legislature both understood and intended that section 1166 would apply to convictions by guilty plea.

### A. *The Legislative History Indicates a Legislative Intent That Section 1166 Be Applied to Defendants Who Plead Guilty.*

As the majority explains, before 1999, section 1166 gave a trial court unguided discretion to permit a defendant to remain out on bail after conviction. (Maj. opn., *ante*, at p. 957.) The 1999 amendment *requires* a court *to commit* a defendant *after conviction* "unless, upon considering" specified factors, it "concludes the evidence supports its decision to allow the defendant to remain out on bail." (§ 1166.) Several legislative analyses explained that the amendment was necessary because "individuals *who are convicted* pose a much greater risk of flight if released [on bail] prior to sentencing. The intent of this [amendment] is to assure that a judge has an opportunity to examine the record of a *convicted* individual prior to release and pending sentencing if that individual is out on bail." (Assem. Com. on Public Safety, Rep. on Assem. Bill No. 476 (1999-2000 Reg. Sess.) Mar. 23, 1999, p. 2, italics added; see also Sen. Com. on Public Safety, Rep. on Assem. Bill No. 476 (1999-2000 Reg. Sess.) July 13, 1999, p. 5.) Another legislative analysis explained that the amendment is "intended to secure *convicted* parties immediately rather than let them free on bail possibly to escape authorities . . . ." (Cal. Dept. of Finance, Analysis of Assem. Bill No. 476 (1999-2000 Reg. Sess.) Apr. 17, 1999, p. 2.)

Nothing in the legislative history supports the majority's speculation that the Legislature "may have concluded that" a defendant convicted by guilty plea "is less likely to pose a flight risk or a danger to public safety" than a defendant convicted by jury verdict. (Maj. opn., *ante*, at pp. 960-961.) On the contrary, two legislative analyses that expressly focused on the amendment's purpose specifically cited the flight risk of defendants who plead guilty. Those analyses explained: "[T]he intent of this bill is to assure that a judge has an opportunity to examine the record of a convicted individual

who is pending sentencing after conviction *or guilty plea*. It should be obvious that individuals who are free on bail after conviction, but who have not been sentenced, pose a greater flight risk than other persons on bail." (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 476 (1999-2000 Reg. Sess.) Aug. 24, 1999, p. 4, italics added; Sen. Com. on Public Safety, Analysis of Assem. Bill No. 476 (1999-2000 Reg. Sess.) July 13, 1999, p. 5, italics added.) Thus, the legislative history indicates that the Legislature did not, as the majority asserts, intend to "dr[a]w" a "distinction . . . between guilty pleas and convictions by verdict . . . ." (Maj. opn., *ante*, at p. 961.) Instead, the legislative history supports the conclusion that the Legislature viewed *all* defendants as posing a greater flight risk *after conviction*—whether by jury verdict *or guilty plea*—and intended the increased public protection under the amended statute to apply to *all* such defendants.[2]

The majority's explanation for virtually ignoring this legislative history is both baseless and unpersuasive. The majority first asserts that it "need not consider legislative history" because section 1166 is not ambiguous "in light of [its] context." (Maj. opn., *ante*, at pp. 962-963.) However, as I have already explained, a statute's context is but *one* of several extrinsic aids we look to where a statute is ambiguous. As we have expressly held, where a statute is ambiguous, "[t]o discern legislative intent, we must examine the legislative history and statutory context of the act under scrutiny. [Citations.]" (*Sand v. Superior Court* (1983) 34 Cal.3d 567, 570 [194 Cal.Rptr. 480, 668 P.2d 787].) Thus, the majority's questionable view of section 1166's context neither requires nor justifies a refusal to consider legislative history.[3]

---

[2]It is therefore not surprising that the most the majority can say to defend its conclusion is that a distinction between defendants who plead guilty and those convicted by jury verdict "is not completely baseless." (Maj. opn., *ante*, at p. 961.)

[3]*Diamond Multimedia Systems, Inc. v. Superior Court* (1999) 19 Cal.4th 1036 [80 Cal.Rptr.2d 828, 968 P.2d 539] (*Diamond*), on which the majority relies (maj. opn., *ante*, at p. 963), actually supports my analysis. There, this court "decline[d]" the defendants' request for consideration of "the context in which the Corporate Securities Law was enacted" and "available legislative history," explaining that "[o]nly when the language of a statute is susceptible to more than one reasonable construction is it appropriate to turn to extrinsic aids . . . ." (*Diamond, supra,* at p. 1055.) Notably, in support of this position, the court cited *Granberry v. Islay Investments* (1995) 9 Cal.4th 738, 744 [38 Cal.Rptr.2d 650, 889 P.2d 970], which, also consistent with my analysis, stated that " 'we look to a variety of extrinsic aids, including . . . the legislative history . . . and the statutory scheme of which the statute is a part,' " only " '[w]hen the [statutory] language is susceptible of more than one reasonable interpretation.' " (See *Diamond, supra,* 19 Cal.4th at p. 1055.) Moreover, despite its statement, the *Diamond* court went on to consider the extrinsic materials the defendants cited. (*Id.* at pp. 1055-1056.)

The majority's fallback position—that the legislative history's *express* references to defendants convicted by guilty plea are "obscure" (maj. opn., *ante*, at p. 963)—is equally baseless and unpersuasive. The majority observes that these express references do not appear on the first page of the relevant legislative reports. (*Ibid.*) Of course, I must concede that the majority is correct. However, unlike the majority, I find this fact to be utterly insignificant. Instead, what I find significant is the fact that, as previously noted, these explicit references appear in sections of the reports that *expressly focus on and explain* the amendment's purpose, intent, and justification. The majority also observes that these express references appear "in a section of the reports quoting background provided by the bill's author." (*Ibid.*) However, we have often relied on similar statements of intent in construing other statutes.[4] (E.g., *People v. Kramer* (2002) 29 Cal.4th 720, 724 [128 Cal.Rptr.2d 407, 59 P.3d 738]; *Price v. Superior Court* (2001) 25 Cal.4th 1046, 1055 [108 Cal.Rptr.2d 409, 25 P.3d 618]; *Delaney v. Baker* (1999) 20 Cal.4th 23, 36 [82 Cal.Rptr.2d 610, 971 P.2d 986].) Discounting these express statements, the majority instead focuses on selected other phrases that, at best, only arguably and inferentially suggest that the Legislature intended to exclude defendants convicted by guilty plea. (Maj. opn., *ante*, at p. 963 [citing phrases "convicted after a trial" and "found guilty after trial"].) The majority offers no convincing justification for relying on these ambiguous phrases and ignoring *express* references to defendants convicted by guilty plea. It cites nothing in the legislative history that explicitly contradicts the express references I have cited or states an intent to exclude defendants convicted by guilty plea. Nor does it explain how its construction fits within the predominant theme expressed throughout the legislative history: that the risk of flight substantially increases *after conviction*, and that courts should therefore be *required* to consider certain factors before releasing a defendant on bail after conviction. The legislative history discloses not the slightest hint of a belief that defendants convicted by guilty plea pose less of a flight risk than other convicted defendants. Thus, the "pick-out-your-friends strategy" the majority cautions against (maj. opn., *ante*, at p. 963), precisely describes the majority's approach to the legislative history, not mine. Indeed, that characterization accurately describes the majority's overall analysis in this case, which, unlike mine, focuses exclusively on a single extrinsic aid—section 1166's context—and ignores all other extrinsic sources. As I have shown, the legislative history, which is one of those other

---

[4]Ironically, in construing a statute for a unanimous court in *Cornette v. Department of Transportation* (2001) 26 Cal.4th 63, 72 [109 Cal.Rptr.2d 1, 26 P.3d 332], the author of today's majority opinion recently relied on "a letter to the Governor" from the statute's "author," finding that it "best explained" the statute's "purpose."

extrinsic sources, strongly supports the conclusion that the Legislature intended section 1166 to be applied to defendants convicted by guilty plea.[5]

### B. *Prior Judicial Construction Indicates a Legislative Intent That Section 1166 Be Applied to Defendants Who Plead Guilty.*

Judicial construction of section 1166 strongly reinforces the conclusion that the legislative history supports: when the Legislature amended section 1166 in 1999, it understood and intended that the amended statute's increased public protection would apply to defendants convicted by guilty plea. In *People v. Fidelity & Deposit Co.* (1930) 107 Cal.App. 160 [290 P. 59] (*Fidelity*), the court applied section 1166 on facts very similar to those now before us. There, the trial court ordered a bail bond forfeited when the defendant, who was continued on bail after pleading guilty, failed to appear for a hearing on his probation request. (*Fidelity, supra,* 107 Cal.App. at p. 162.) Contesting the forfeiture order, the surety argued that it was "released from liability on the bond when the court failed" to fulfill its "duty . . . to order [the defendant] into custody upon his plea of guilty." (*Id.* at pp. 162-163.) In rejecting this claim, the Court of Appeal responded that several Penal Code statutes established "that a defendant may be admitted to bail not merely until the time he is convicted, but until he appears for judgment, and that such a bond as that now under consideration continues until the defendant, for whose release it is given, makes this appearance." (*Id.* at p. 163.) Among the statutes the court relied on was section 1166, which then provided: "If a general verdict is rendered against the defendant, or a special verdict is given, he must be remanded, if in custody, or if on bail he may be committed . . . to await the judgment of the Court upon the verdict. When committed his bail is exonerated . . . ." (1872 Pen. Code, § 432, p. 261.) "The plain implication from this," the *Fidelity* court explained, "is that if a defendant is out on bail, the court has a discretion either to commit him or not to do so, and that if he is not committed, his bail is not exonerated." (*Fidelity, supra,* 107 Cal.App. at p. 164.) Thus, the court concluded, "the statutes," including section 1166, "seem to particularly authorize" a bond "so conditioned as to make the surety responsible for the appearance of the defendant up to the time for pronouncing judgment." (*Fidelity, supra,* 107 Cal.App. at p. 164.) The surety in *Fidelity* alternatively "argued that there must be some hearing or showing before the trial court can exercise" its "discretion" to continue a defendant on bail "after conviction," and that a

---

[5]Nor does anything in the legislative history suggest that the Legislature viewed defendants convicted after nonjury trials as posing less of a flight risk than defendants convicted by jury verdict. However, the majority's analysis necessarily renders section 1166's protection inapplicable to defendants convicted after nonjury trials, because such convictions occur by court "finding," not by jury "verdict." (§ 689.) Thus, the majority errs in stating that "a person is convicted *either* by verdict *or* by guilty plea." (Maj. opn., *ante,* at p. 957.)

surety is "entitled to notice thereof." (*Id.* at pp. 164-165.) Again turning to section 1166 to reject the surety's argument, the court replied that a surety has no "right to assume that the court will commit a defendant to custody, as it *may* do under sections 1129 and 1166 . . . ." (*Fidelity, supra,* 107 Cal.App. at p. 165.) Thus, the *Fidelity* court *directly relied on section 1166* in determining a court's power and a surety's rights with respect to the bail status of a defendant convicted *by guilty plea.*

Thirty years later, in *People v. Scott* (1960) 184 Cal.App.2d 792 [7 Cal.Rptr. 755], a similar issue arose in a case involving a conviction by court findings in a nonjury trial. After "announc[ing] its findings," the trial court in *Scott* permitted the defendant to remain at large after her conviction and ordered her to return in three days. (*Id.* at p. 793.) She did not return as ordered and "[h]er bail was forfeited." (*Ibid.*) In affirming the forfeiture, the appellate court held that "[s]ince defendant was free on bail at time of conviction, it was optional with the court to permit her to remain at liberty on bail pending judgment [citations]." (*Ibid.*) The only authority the court cited for this holding was section 1166 and *Fidelity.* Thus, in a case involving conviction by court findings after a nonjury trial, the court applied section 1166, which specifies a court's powers after "a general verdict is rendered . . . or a special verdict is given," and *Fidelity,* which relied on section 1166 in a case involving conviction *by guilty plea.*

Like the legislative history, these decisions—and the Legislature's reaction to them—strongly support the conclusion that the Legislature understood and intended that the increased public protection it was providing by amending section 1166 in 1999 would apply to defendants convicted by both guilty pleas and court findings after nonjury trials. During the almost 70 years between *Fidelity* and the 1999 amendment, no case expressed a different view or even suggested that section 1166 does not apply under these circumstances. Moreover, the Legislature amended section 1166 in 1935, only five years after *Fidelity,* but did nothing at that time to undermine or reverse *Fidelity*'s application of the statute to a conviction by guilty plea. (Stats. 1935, ch. 657, § 5, p. 1814.) Nor did the Legislature do anything to undermine or reverse *Fidelity*—or *Scott*'s application of section 1166 to convictions by court findings after nonjury trials—when the Legislature again amended the statute in 1999. The Legislature's lack of action in this regard raises a presumption that it endorsed *Fidelity* and *Scott,* because " '[w]hen the Legislature amends a statute without changing those portions . . . that have previously been construed by the courts, the Legislature is presumed to have known of and to have acquiesced in the previous judicial construction.' [Citations.]" (*People v. Atkins* (2001) 25 Cal.4th 76, 89-90

[104 Cal.Rptr.2d 738, 18 P.3d 660]; see also *Malcolm v. Superior Court* (1981) 29 Cal.3d 518, 528 [174 Cal.Rptr. 694, 629 P.2d 495] [because the Legislature "presumably was aware of" statute's prior "judicial interpretation" when it amended the statute, its retention of "parallel language in the revised statute" requires that we "construe the present provision . . . in conformity with the established judicial interpretation"].)

The majority incorrectly discounts the significance of these decisions. According to the majority, *Fidelity* "did not hold that guilty pleas fall within the scope of section 1166," but merely "cited section 1166 as an example of an analogous situation in which a convicted defendant remains free on bail pending sentencing and judgment." (Maj. opn., *ante*, at p. 960.) As I have already demonstrated, the majority is substantively incorrect; the *Fidelity* court *directly relied on section 1166* in determining a court's power and a surety's rights with respect to the bail status of a defendant convicted *by guilty plea.* In any event, the majority's response focuses on the wrong question. Our task here is not, as the majority appears to assume, to think up some *new* way *now* to distinguish *Fidelity* and render it inapposite, but is to determine *what the Legislature understood and intended* when it amended section 1166 *in 1999.* Notwithstanding the arcane and arguable distinction the majority now attempts to draw, when the Legislature amended section 1166 in 1999, it no doubt understood *Fidelity* as applying section 1166 to a defendant who pleads guilty. The majority similarly focuses on the wrong question in its treatment of *Scott.* The question is not, as the majority suggests, whether *Scott* "was correct" to apply section 1166 to a defendant convicted by court finding after a nonjury trial (maj. opn., *ante*, at p. 960), but whether, in light of *Scott,* the Legislature understood and intended section 1166 to apply only to defendants convicted by jury verdict. Both decisions support the conclusion that the Legislature intended the statute to have a broader reach.

Also supporting this conclusion are the appellate decisions I have already discussed that applied section 1238 to guilty pleas based on their legal equivalence with jury verdicts. (*People v. Eberhardt, supra,* 186 Cal.App.3d at pp. 1119-1124; *People v. Hames, supra,* 172 Cal.App.3d 1238; *People v. Gaines, supra,* 112 Cal.App.3d at p. 514; *People v. Thatcher, supra,* 255 Cal.App.2d at pp. 831-832; *People v. Orrante, supra,* 201 Cal.App.2d at p. 557, fn. 1.) Each of these decisions applied section 1238 to convictions by guilty plea *because of* its use of the term "verdict," and notwithstanding its lack of "express reference to guilty pleas" or its failure to "use a broad term, such as 'conviction.'" (Maj. opn., *ante*, at pp. 957-958.) Accordingly, they further support the conclusion that in 1999, when the Legislature enacted section 1166 in its current form, the Legislature understood and intended that

its use of the term "verdict" would not limit the statute to jury verdicts, but would render it applicable to guilty pleas and court findings after nonjury trials. This conclusion follows from our long-standing presumption that the Legislature is "aware of statutes and judicial decisions already in existence, and to have enacted or amended a statute in light thereof. [Citation.]" (*People v. Harrison* (1989) 48 Cal.3d 321, 329 [256 Cal.Rptr. 401, 768 P.2d 1078].) Thus, "[w]here a statute is framed in language of an earlier enactment on the same or an analogous subject, and that enactment has been judicially construed, the Legislature is presumed to have adopted that construction. [Citation.]"[6] (*Harrison, supra,* at p. 329; see also *People v. Jones* (2001) 25 Cal.4th 98, 109 [104 Cal.Rptr.2d 753, 18 P.3d 674] ["[w]e presume that the Legislature, in drafting [certain] provisions" of the Penal Code, "was aware of our long-standing judicial construction of" the same language "as used in other Penal Code statutes and intended to incorporate it"].)

Again, in discounting the significance of these decisions, the majority errs both substantively and in its analytical approach. Substantively, the majority is incorrect in asserting that "the equivalence of guilty pleas and guilty verdicts" that both this court and the Courts of Appeal have identified "relates" only to their "substantive legal effect," not to "procedure." (Maj. opn., *ante,* at p. 960.) Here, we are certainly no more "concerned with procedure" (*ibid.*) than were the courts that determined that section 1238 authorizes the People to appeal after a defendant pleads guilty.[7] Analytically, the majority errs in searching for a way to distinguish *Statum* and the other section 1238 cases, rather than determining what the Legislature reasonably understood when it amended section 1166 in 1999. Certainly, nothing in the legislative history or the case law suggests that the Legislature had the majority's novel distinction in mind when the Legislature amended section 1166.

---

[6] Because we decided *People v. Statum, supra,* 28 Cal.4th 682, after the 1999 amendment of section 1166, I do not rely on it in applying this principle here.

[7] In *People v. Valladoli* (1996) 13 Cal.4th 590 [54 Cal.Rptr.2d 695, 918 P.2d 999], which the majority cites to support its assertion (maj. opn., *ante,* at p. 960), we did not even suggest that the equivalence of guilty pleas and jury verdicts relates only to substantive legal effect and not to procedure. Rather, we broadly stated that "[a] guilty plea is, for most purposes, the legal equivalent of a verdict of guilty reached by a jury." (*Valladoli, supra,* 13 Cal.4th at p. 601.) Similarly broad statements appear in numerous other cases. (E.g., *People v. Williams* (1945) 27 Cal.2d 220, 228 [163 P.2d 692] ["[a] plea of guilty is equivalent to the verdict of a jury"]; *Smith v. Municipal Court* (1977) 71 Cal.App.3d 151, 154 [139 Cal.Rptr. 121] ["a guilty plea, once accepted by the court, is the equivalent of a verdict of a jury"]; *People v. McDaniels* (1958) 165 Cal.App.2d 283, 285 [331 P.2d 450] [guilty plea "is the equivalent of a verdict of a jury"]; *People v. Kepford* (1921) 52 Cal.App. 508, 513 [199 P. 64] [guilty plea is "equivalent to the verdict of a jury"].)

C. *Public Policy as Declared by the Legislature Supports Applying Section 1166 to Defendants Who Plead Guilty.*

As previously explained, the Legislature passed the 1999 amendment to section 1166—which *requires* a court *to commit* a defendant *after conviction* unless it concludes the evidence supports its decision to allow the defendant to remain out on bail—because, in the Legislature's view, the risk that a defendant will flee substantially increases after conviction. The Legislature wanted "to assure that a judge has an opportunity to examine the record of a convicted individual prior to release and pending sentencing if that individual is out on bail." (Assem. Com. on Public Safety, Rep. on Assem. Bill No. 476 (1999-2000 Reg. Sess.) Mar. 23, 1999, p. 2.) As we long ago recognized, the " 'great majority' " of convictions are obtained by guilty plea. (*People v. West* (1970) 3 Cal.3d 595, 604 [91 Cal.Rptr. 385, 477 P.2d 409].) Thus, we best serve the Legislature's purpose by construing the statute, if reasonably possible, to apply to all defendants who are convicted, including those who plead guilty. As I have already demonstrated, such a construction is both reasonable and most likely reflective of the Legislature's intent.

By contrast, the majority substantially defeats the Legislature's purpose by adopting a construction that renders section 1166 inapplicable to the great majority of defendants who are convicted—those who plead guilty. Moreover, although the majority purports not to decide any question regarding convictions after nonjury trials (maj. opn., *ante*, at p. 960), its analysis necessarily further defeats the Legislature's purpose by rendering section 1166 inapplicable under these circumstances, because such convictions occur by court "finding," not by jury "verdict." (§ 689.)

The majority offers no public policy justification for its construction. It speculates, without basis, that the Legislature "may have concluded that" a defendant convicted by guilty plea "is less likely to pose a flight risk or a danger to public safety" than a defendant convicted by jury verdict. (Maj. opn., *ante*, at pp. 960-961.) As I have already explained, nothing in the legislative history supports this speculation. Moreover, even were the majority correct, the majority fails to explain why the Legislature would want to allow courts to release defendants convicted by guilty plea without first going through the process section 1166 *mandates to protect public safety.* Thus, although the majority can "think of" a distinction (maj. opn., *ante*, at p. 962) that, in its view, is not "completely baseless" (maj. opn., *ante*, at p. 961), the majority offers no reason why the Legislature would want to draw this distinction. In short, from the perspective of the public policy the Legislature has declared, the majority's construction is both unjustified and unjustifiable.

Instead, the majority insists that section 1166 is not necessary to protect the public from the great majority of convicted defendants, i.e., those convicted by guilty plea. According to the majority, as to all defendants admitted to bail, the factors section 1166 specifies were, under section 1275, "already considered at the time bail was initially set," and the "only new factor" after a defendant pleads guilty is "the fact of the conviction itself." (Maj. opn., *ante*, at p. 961.) Although acknowledging that courts "must evaluate" this "new factor" to determine whether a defendant should remain out on bail, the majority states that section 1166 "does not have to apply in order for a court to take the defendant's conviction into account . . . ." (Maj. opn., *ante*, at p. 961.)

For several reasons, the majority's reasoning is unpersuasive. First and foremost, it is inconsistent with both the Legislature's view and purpose in amending section 1166. As explained above, the Legislature viewed "individuals who are free on bail *after conviction*" by verdict "or guilty plea" as "pos[ing] a greater flight risk than other persons on bail," and it therefore amended section 1166 to *require* courts to consider the fact of conviction before allowing convicted defendants to remain on bail. (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 476 (1999-2000 Reg. Sess.) p. 4, italics added; Sen. Com. on Public Safety, Analysis of Assem. Bill No. 476 (1999-2000 Reg. Sess.) July 13, 1999, p. 5, italics added.) Contrary to this intent, the majority's holding leaves it to the trial court's *discretion* to consider the fact of conviction in determining whether to permit defendants convicted by guilty plea to remain out on bail. Moreover, the majority's observation that section 1166 "does not have to apply" for a court to take this factor into account (maj. opn., *ante*, at p. 961) is of no consequence, because the same is true of *every* factor section 1166 specifies. The Legislature's purpose in amending section 1166 was to make consideration of *all* of the specified factors *mandatory*, not discretionary.

The second flaw in the majority's reasoning is that the differences between section 1166 and section 1275 in terms of the factors a court must consider are both greater and more significant than the majority indicates. Whereas section 1275, subdivision (a), requires courts to consider "the seriousness of the offense charged" and "the probability of [the defendant's] appearing at trial or hearing of the case," section 1166 requires courts to consider "the seriousness of the offense charged *and proven*" and "the probability of the defendant failing to appear *for the judgment of the court* . . . ."[8] (Italics added.) Obviously, a defendant at the beginning of a prosecution who does not yet know the strength of the state's case and who

---

[8]Several legislative reports emphasized that the 1999 amendment to section 1166 "direct[s] a court to consider," among other factors, the defendant's "crime of conviction." (Sen. Com.

faces only the possibility of trial, of conviction on some charge, and of uncertain punishment, generally poses a different—and, in the Legislature's view, a lesser—flight risk than a defendant who has been convicted of a specific offense, even if by guilty plea, who faces certain punishment, who knows the statutory punishment for the offense, and who awaits only judgment. Accordingly, as several legislative analyses explained, the Legislature amended section 1166 in 1999 to "grant[] an additional safeguard against *convicted* felons fleeing jurisdiction by *requiring* a judge to *again* look at the defendant's flight risk" in deciding whether to permit the *now convicted* defendant to remain out on bail. (Assem. Com. on Public Safety, Republican Analysis of Assem. Bill No. 476 (1999-2000 Reg. Sess.) Mar. 22, 1999, italics added; Assem. Com. on Public Safety, Republican Analysis of Assem. Bill No. 476 (1999-2000 Reg. Sess.) Apr. 23, 1999, italics added; see also Assem. Com. on Public Safety, Republican Analysis of Assem. Bill No. 476 (1999-2000 Reg. Sess.) Sept. 2, 1999 [amendment "grants an additional safeguard against convicted felons fleeing the jurisdiction or menacing the community by requiring trial judge's [*sic*] to look again at the defendant's overall fitness for remaining out on bail"].) Under the majority's analysis and holding, a court may, in its discretion—but is not required to—consider the fact and seriousness of the conviction in making this determination as to defendants convicted by guilty plea. Because the great majority of convictions now occur by guilty plea, the majority's construction of section 1166 renders the increased public protection the Legislature sought to provide inapplicable to the great majority of defendants who are convicted.

Finally, and unfortunately, rather than respond to my argument, the majority completely miscasts and misrepresents my position in an apparent attempt to arouse emotions against it. The majority states my view to be that "judicial discretion in this context is bad policy." (Maj. opn., *ante*, at p. 963.) However, I make no judgment on this policy question, because it is not my job to do so here. My position is that *the Legislature* has declared public policy in this context and, as I have explained, the majority's construction defeats the public policy *the Legislature* has declared. The fact remains that the majority offers no reason why the Legislature would have wanted to exempt the great majority of convicted defendants from a mandatory process that the Legislature thought was necessary to protect public safety. Thus, the majority offers no valid response to my actual position—that the majority's construction defeats public policy *as declared by the Legislature*.

on Public Safety, Rep. on Assem. Bill No. 476 (1999-2000 Reg. Sess.) July 13, 1999, p. 2; Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 476 (1999-2000 Reg. Sess) Aug. 24, 1999, p. 1.)

### D. *The Statutory Context Does Not Justify the Majority's Construction.*

Finally, I consider the extrinsic aid on which the majority places *sole* reliance: section 1166's placement within the statutory scheme. According to the majority, given that context, the term "verdict" in section 1166 "can only reasonably mean one thing: a verdict given at the conclusion of a contested trial." (Maj. opn., *ante,* at p. 962.)

For several reasons, the majority is incorrect. First, as I have already explained, statutory context is only one of many extrinsic aids to which we look in construing an ambiguous statute. Nothing supports the majority's decision to focus on this extrinsic aid to the exclusion of all others. Second, the majority vastly overstates the significance of the statute's context. The majority emphasizes section 1166's inclusion in a title of the Penal Code addressing "matters that arise after the start of trial and before judgment." (Maj. opn., *ante,* at p. 958.) However, a defendant may plead guilty at any time, including, as the majority notes, "after a trial has begun." (Maj. opn., *ante,* at p. 960.) Moreover, the same chapter that contains section 1166 also addresses disposition by court findings in a nonjury trial. (§§ 1158, 1165, 1167.) Thus, section 1166's placement within the Penal Code does little, if anything, to indicate that the statute's language renders the statute applicable only to defendants convicted by jury verdict. It certainly does not, as the majority asserts, "clearly indicate[]" that this is the statute's *only* reasonable interpretation. (Maj. opn., *ante,* at p. 958.)

Finally, and most importantly, the majority's exclusive focus on context defeats our very goal in considering extrinsic aids: to " 'select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and [to] avoid an interpretation that would lead to absurd consequences.' " (*People v. Sinohui, supra,* 28 Cal.4th 205, 212.) As I have demonstrated, other, far more illuminating and definitive extrinsic aids—the legislative history, prior judicial construction, and public policy—support the conclusion that the Legislature understood and, to enhance public safety, intended that section 1166 would be applied to all *convicted* defendants. The majority's construction defeats this purpose and produces an absurd consequence by rendering section 1166's increased protection inapplicable to the great majority of defendants who are convicted. As I have demonstrated, nothing—including the statute's context—requires that we adopt this curious construction.

### III. *Conclusion*

Although I disagree with the majority's holding that section 1166 does not apply in this case, ultimately, I do not necessarily disagree with the majority's result. I have serious doubt that a trial court's failure to follow section

1166 in permitting a convicted defendant to remain out on bail requires exoneration of a surety's bond when the defendant fails to appear. As demonstrated, the Legislature passed the statute to protect the public, not sureties. However, the parties have not raised or briefed this potentially dispositive issue; therefore, it is not before us and the majority correctly declines to discuss it. (Maj. opn., *ante*, at pp. 957, 962.) But the fact that this issue is not now before us—and that Seneca Insurance Company is therefore entitled to return of its money if section 1166 applies—should not drive our construction of a statute the Legislature passed to enhance public safety, because the effect of the majority's holding will reach well beyond the strictly financial context of this case. Indeed, Seneca Insurance Company is probably correct in stating that "[w]ere bail money not involved" in this case, "the People would likely be on [the other] side of the argument, given that protection of the public is the highest objective." We should not restrictively construe a statute the Legislature passed to increase public safety in order to enrich state coffers, absent evidence of legislative intent requiring us to do so. Because such evidence is absent here, I dissent.