[No. B166737. Second Dist., Div. Four. Dec. 1, 2004.]

THE PEOPLE, Plaintiff and Respondent, v.
ACCREDITED SURETY & CASUALTY CO., INC., Defendant and
Appellant.

2

COUNSEL

Nathan W. Tarr for Defendant and Appellant.

Steve Cooley, District Attorney, Patrick D. Moran and William Woods, Deputy District Attorneys, for Plaintiff and Respondent.

OPINION

**GRIMES, J.**—Accredited Surety & Casualty Co., Inc. (Accredited), appeals from the order denying its motion to vacate forfeiture of the bail it posted for Jose Antonio Pantaleon (Pantaleon) and for reinstatement and exoneration.

Accredited contends the court's failure to consider the statutory factors in Penal Code, § 1275[1] before reducing Pantaleon's bond operates to exonerate its liability on the bond. Alternatively, Accredited contends its liability should be exonerated based on the failure of the State of California (State) to make some special disclosure to Accredited that Pantaleon possessed in excess of 44 pounds of cocaine, he had a prior drug-related conviction, he was facing a maximum of 25 years in prison, and to avoid this sentence, he had to perform his informant duties to the satisfaction of law enforcement.

Based on our review of the record and applicable law, we affirm the order.

The amount of bail is primarily within the discretion of the magistrate or judge, limited only by the general rules that bail should be fixed to secure the appearance of the defendant and not to punish, and it should not be excessive. (See 4 Witkin & Epstein, Cal. Criminal Law (3d ed. 2000) Pretrial Proceedings, § 87, p. 286.) The judicial officer has discretion to reduce bail below the minimum established by the bail schedule. In that case, the judge or magistrate must state the reasons on the record and, in some circumstances, make findings of fact on the record. (See, e.g., §§ 1270.1, subd. (d) & 1275, subd. (c).) Here, the trial court reduced bail from $2 million to $20,000 pursuant to stipulation between the People and Pantaleon, without making any findings under section 1275.

The procedures for setting a criminal defendant's bail pursuant to section 1275 have no legal effect on the forfeiture of bail upon defendant's failure to appear for sentencing. The failure of the trial judge or magistrate to comply with section 1275 is not a defense to forfeiture and does not operate to exonerate the bond.

---

[1] All further section references are to the Penal Code unless otherwise indicated.

 Moreover, the State does not owe the bail bond surety a duty of disclosure in the absence of active concealment or misrepresentation or a showing that the State had exclusive knowledge of facts that were not known to or reasonably discoverable by the surety.

## FACTUAL AND PROCEDURAL SUMMARY

On September 12, 2001, a complaint was filed charging Pantaleon with a single count of possessing a controlled substance (cocaine) for sale, a felony, and alleging that the amount possessed was over 20 kilograms (or 44 pounds). (Health & Saf. Code, §§ 11351 & 11370.4, subd. (a)(4).)[2]

The People requested that bail be set at $2 million based on the crime charged and the amount of narcotics alleged. Following a hearing (§ 1275), the court ordered bail set at $2 million. Subsequently, the complaint was amended to allege Pantaleon had suffered a prior drug-related conviction (Health & Saf. Code, § 11370.2, subd. (a)).

On November 16, 2001, pursuant to a plea bargain, Pantaleon pled guilty to the charged offense and admitted both special allegations. The prosecutor informed Pantaleon that on May 16, 2002, six months later, at sentencing, the trial court would "have the option" to sentence him to probation on certain terms and conditions, including a year in county jail or "up to the maximum time" of 25 years in prison.

The People agreed to reduce bail to $20,000. When the trial court inquired about the need to comply with section 1275, the prosecutor requested that compliance be "lifted at this time." The court agreed and reduced Pantaleon's bail to $20,000 pending imposition of sentence.

Pantaleon's parents gave Andy Andriole, an Accredited bail agent, documents which reflected Pantaleon had been with "the same employer for over 7 years." Andriole then telephoned an unidentified person at "the jail" who related that Pantaleon was charged with "H & S Code 11351," his bail was $20,000, and provided "his booking number, the date, time and place of his appearance." Based on this information, Accredited issued a bail bond for Pantaleon's release on November 19, 2001.

---

[2] We have augmented the record with the Los Angeles Superior Court file, case No. BA222003. (Cal. Rules of Court, rule 12(a)(1).)

On May 16, 2002, Pantaleon failed to appear, and the court declared his bail forfeited. On May 17, 2002, notice of the bail forfeiture was mailed. On November 15, 2002, Accredited filed its motion to vacate forfeiture and for reinstatement and exoneration of the bail bond. It later filed supplemental moving papers, which included the February 12, 2003, declaration of Mr. Andriole. On February 18, 2003, the trial court denied Accredited's motion.

## DISCUSSION

### 1. *Surety's Liability Not Tied to Compliance with Section 1275*

Accredited contends its liability on the bond is discharged, because the trial court failed to comply with section 1275 in that it reduced bail from $2 million to $20,000 without considering the amount of cocaine involved; that defendant had a prior drug-related conviction; he was facing a maximum of 25 years in prison; and to avoid this sentence, he had to perform his informant duties to the satisfaction of law enforcement.

We disagree. Noncompliance with section 1275 is not a cognizable ground for exoneration nor a defense to forfeiture of a bail bond.

Accredited does not assert any statutory defenses to forfeiture. It does not deny it received proper notice of forfeiture, nor does it claim Pantaleon's nonappearance was due to the fact that he was deceased or was otherwise permanently or temporarily unable to appear because of illness, insanity, or detention by military or civil authorities. (See, e.g., § 1305, subds. (d)(1) & (e)(1).) Rather, its defense is based on the claimed failure of the trial court to comply with section 1275. We have found no authority, and Accredited has cited none, which recognizes this as a valid nonstatutory defense to forfeiture, and we decline to create such a defense.

Accredited also fails to cite any applicable authority in support of its claim that noncompliance with section 1275 operates to exonerate the surety from liability on the bond. This claim is not among the statutory grounds for exoneration. (See, e.g., §§ 980, subd. (b), 1000.2, 1116, 1188, 1296, 1305, subd. (c)(1), 1371, 1384.) Moreover, Accredited's claim does not fall within the "well established [rule] that where performance of the conditions of a bail bond is rendered impossible by an act of God, an act of the obligee (i.e., the People), or an act of law, the bond will be exonerated. [Citations.]" (*People v. Amwest Surety Ins. Co.* (1987) 195 Cal.App.3d 1396, 1399 [241 Cal.Rptr. 412], fn omitted.)

█ The rule of statutory interpretation that "the law disfavors forfeitures" does not apply here. The statutes pertaining to posting of a bail bond (§§ 1269, 1269a, 1278, 1279, 1280, 1281, 1287, 1292) do not refer to section 1275, and neither does section 1305, the statute expressly listing the defenses of a surety to forfeiture. A plain reading of section 1275 reveals that its purpose and provisions have nothing to do with bail bonds, including exoneration or forfeiture of the bail bond. "If the plain language of the statute is clear and unambiguous, our inquiry ends, and we need not embark on judicial construction. [Citations.] If the statutory language contains no ambiguity, the Legislature is presumed to have meant what it said, and the plain meaning of the statute governs. [Citations.]" (*People v. Johnson* (2002) 28 Cal.4th 240, 244 [121 Cal.Rptr.2d 197, 47 P.3d 1064].)

█ The unambiguous purpose of section 1275 is public safety. "In setting, reducing, or denying bail, the judge or magistrate shall take into consideration the protection of the public, the seriousness of the offense charged, the previous criminal record of the defendant, and the probability of his or her appearing at trial or hearing of the case. The public safety shall be the primary consideration." (§ 1275, subd. (a).)

As support for its argument that the bond should be exonerated because the trial court failed to comply with section 1275, Accredited misinterprets *People v. Seneca Ins. Co.* (2003) 29 Cal.4th 954 [129 Cal.Rptr.2d 842, 62 P.3d 81]. In that case, the surety moved to vacate forfeiture and exonerate bail on several grounds, including the trial court's failure to proceed pursuant to section 1166 before permitting defendant to remain free on bail following his guilty plea and pending sentencing. (29 Cal.4th at p. 955.) Section 1166 lists the public safety factors that may support a decision to allow an out-of-custody defendant to remain on bail after conviction pending sentencing. The court concluded that section 1166 does not apply to a defendant who pleads guilty, and therefore, the trial court was not required to comply with section 1166. (29 Cal.4th at p. 957.)

█ Accredited argues that because the trial court here was *not* required to comply with section 1166, it *was* required to comply with section 1275. Accredited contends there is support for this argument in language of the *Seneca* opinion noting that section 1166 lists "almost verbatim" the same factors as section 1275, subdivision (a) and that trial courts consider these factors in initially setting bail "in the case of *all* on-bail defendants." (*People v. Seneca Ins. Co., supra*, 29 Cal.4th at p. 961.) In making this observation, the *Seneca* court was not stating that failure of the trial judge or magistrate to consider the factors in section 1275, subdivision (a), in setting (or reducing) bail operates to exonerate liability on the bail bond, an issue not before it. (*People v. Barragan* (2004) 32 Cal.4th 236, 243 [9 Cal.Rptr.3d 76,

83 P.3d 480] [cases not authority for propositions not considered].) To the contrary, the court expressly stated "[w]e do not decide whether a trial court's failure to comply with section 1166 in a case where that provision *does apply* would have the effect of exonerating bail by operation of law." (*People v. Seneca Ins. Co., supra,* 29 Cal.4th at p. 957, italics added.)

The court did conclude, however, that "[n]othing in section 1166 abrogates [the surety's] contractual obligation." Pursuant to the bail bond contract, the surety "expressly guaranteed [the defendant's] appearance at judgment following conviction, and in the event [he] failed to appear, [the surety] promised to pay [the amount posted]." (*People v. Seneca Ins. Co., supra,* 29 Cal.4th at pp. 963–964.) Similarly, nothing in section 1275 abrogates Accredited's contractual duty to pay the $20,000 it was obliged to pay when Pantaleon failed to appear as guaranteed by Accredited.

█ In view of the foregoing, we conclude the failure of the judicial officer, whether the trial judge or magistrate, to comply with section 1275 is unrelated to the subject of bail bonds, does not operate to exonerate a surety's liability, and is not a defense to forfeiture of the bail bond.

### 2. *No Duty to Disclose Facts Readily Available to Accredited*

█ "While bail bond proceedings occur in connection with criminal prosecutions, they are independent from and collateral to the prosecutions and are civil in nature. [Citation.]" (*People v. American Contractors Indem. Co.* (2004) 33 Cal.4th 653, 657 [16 Cal.Rptr.3d 76, 93 P.3d 1020].) The "bail bond is a contract between the surety and the government whereby the surety acts as a guarantor of the defendant's appearance in court under the risk of forfeiture of the bond." (*People v. Ranger Ins. Co.* (1994) 31 Cal.App.4th 13, 22 [36 Cal.Rptr.2d 807].)

Accredited contends the failure of the State to disclose the amount of cocaine in defendant's possession and his potential sentence amounts to a breach of contract which entitles it to rescind the bail bond contract. The thrust of Accredited's argument is that it would not have entered into the bail bond contract with the State if it had known all the facts concerning the reduction of Pantaleon's bail, and that the State breached the bail contract by failing to disclose these facts. We conclude no duty to disclose existed.

In support of its breach of contract theory, Accredited misrelies on *Howard Contracting, Inc. v. G. A. MacDonald Construction Co.* (1998) 71 Cal.App.4th 38 [83 Cal.Rptr.2d 590], for the proposition that a party to a contract who conceals or fails to disclose material facts has committed a breach of contract. Aside from the fact that *Howard Contracting* involved

a public construction contract, not a bail bond contract, Accredited offered no evidence that the State misrepresented or concealed anything from Accredited. The only evidence Accredited offered in support of its motion to vacate forfeiture and exonerate the bond was the declaration of Andy Andriole, the bail agent for Accredited who wrote the bond for defendant.

In pertinent part, Mr. Andriole stated: "As I always do, I called the jail and was advised that [Pantaleon] was charged with H & S Code 11351, [and] I was given his booking number, the date, time and place of his appearance, and the amount of bail." He further stated, *"It was my feeling that it could not be a very significant possession for sale case with bail set at only $20,000.00. Since this was lower than the required bail under the 2002 Felony Bail Schedule for Los Angeles Court, (Possession for sale, up to 6 oz., requires a bail of $30,000.00), it was my understanding at that time, that the reduction of bail must have been the result of Court review as mandated by Penal Code 1275, and Penal Code 1269b(c)."* (Italics added.) He concluded that he would have never written the $20,000 bail bond if he had known that Pantaleon's bail had been reduced without this review and "that over 40 pounds of cocaine was involved, that [Pantaleon] had a prior narcotic conviction record, and that he was facing a possible 25 year sentence."

Mr. Andriole acknowledged that he was aware bail had been set below the bail schedule. However, there is nothing in his declaration from which we might infer that he made any effort to find out *why* the court set bail below the minimum established by the schedule. Mr. Andriole stated that "it was my understanding at that time, that the reduction of bail must have been the result of Court review as mandated by Penal Code 1275, and Penal Code 1269b(c)."

Mr. Andriole did *not* state that his understanding arose from anything he was told by the person at "the jail" with whom he spoke, or by anyone else. Apparently, he made an assumption that defendant was a low flight risk on the basis of his own personal "feeling that it could not be a very significant possession for sale case with bail set at only $20,000.00." More to the point, Mr. Andriole did not state how "Court review" would have influenced his decision whether to write the bond.

In short, Mr. Andriole simply demonstrated that Accredited entered into the bail bond contract based on its own unilateral mistake of fact. Omitted from his declaration is any basis for finding a duty of disclosure on the part of the State. There are no facts setting forth any representation(s) that the amount of bail was or was not based on any particular factors or any active concealment by the State or any showing that the State had "sole knowledge or access to [the] material facts and kn[ew] that such facts are not known to or reasonably

discoverable by [Accredited]." (*Goodman v. Kennedy* (1976) 18 Cal.3d 335, 347 [134 Cal.Rptr. 375, 556 P.2d 737]; cf. *People v. Surety Ins. Co.* (1978) 77 Cal.App.3d 533, 535–536 [143 Cal.Rptr. 661] [representation a violation of section 245 *"only charge* pending" when, in fact, defendant faced other charges], italics added).

If the specific allegation of possession of cocaine over a certain amount (Health & Saf. Code, § 11370.4, subd. (a)(4)), in addition to crime of possession of cocaine for sale (Health & Saf. Code, § 11351), was an important factor in deciding whether or not to issue the bail bond, Accredited "could have easily ascertained the charges . . . against [Pantaleon] by checking the superior court file." (*People v. Surety Ins. Co., supra,* 77 Cal.App.3d at p. 537.) Also, by checking the file, it would have known that this was not a routine drug case and that it warranted additional inquiry. Review of the file would have alerted Accredited to the fact that bail had been set originally for $2 million, but following Pantaleon's guilty plea and his admissions, bail was then reduced to $20,000. Indeed, Accredited would have found in the court file: (a) the written agreement between the People and Pantaleon stating the terms of the plea bargain, (b) the arraignment information and bail computation which calculated the presumptive bail was $2 million, (c) the order initially setting bail at $2 million, and (d) the court order reducing bail to $20,000 "pursuant to stipulation."

In denying Accredited's motion to vacate forfeiture of the bond, the trial court properly rejected its argument that the mere setting of bail so low was a fact in and of itself which misled the surety. A bail agent like Mr. Andriole, who knows bail has been set below the bail schedule, and who decides to write a bond in reliance on the court's considering the section 1275 factors, should inquire what reasons were given on the record for reducing bail below the minimum schedule.

If Mr. Andriole had reviewed the record of the plea in this case, he would have known the court accepted the People's agreement to reduce Pantaleon's bail without a section 1275 hearing. He made no inquiry, however, and the trial court aptly found that Accredited assumed the risk, because if Mr. Andriole had conducted a routine investigation of the information that was available, he would have learned the true nature of the charges.

 Accredited's asserted lack of knowledge thus must be laid to its own neglect in not checking the record or the court file, and its failure to do so is not chargeable to the State unless the State made it impossible for Accredited to check, which it does not claim happened. In the absence of a showing of a duty to disclose, there can be no fraud upon which exoneration of liability on the bail bond contract can be based. Accredited's attack on forfeiture of the bail bond therefore fails.

## DISPOSITION

The order is affirmed. The People are awarded costs on appeal. (Cal. Rules of Court, rule 27(a)(1) & (2).)[3]

Epstein, P. J., and Hastings, J., concurred.

---

[3] In their brief, the People contend "[t]he District Attorney may recover its costs in opposing this request for exoneration. ([§] 1305.3; *People v. Amwest Surety Ins. Co.* (1997) 56 Cal.App.4th 915, 926 [66 Cal.Rptr.2d 29].)" This request must be addressed to the superior court in the first instance. (*Id.* at p. 926.)