Filed 7/16/20

**CERTIFIED FOR PUBLICATION**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E072188 |
| v. | (Super.Ct.No. SWC1801713) |
| FINANCIAL CASUALTY & SURETY, INC., | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County. John M. Monterosso and Jeffrey J. Prevost, Judges. Affirmed.

Law Office of John Rorabaugh, John Mark Rorabaugh and Crystal L. Rorabaugh for Defendant and Appellant.

Gregory P. Priamos, County Counsel, Tiffany North and Eric Stopher, Deputy County Counsel, for Plaintiff and Respondent.

1

## I. INTRODUCTION

Defendant and appellant, Financial Casualty & Surety, Inc. (Surety), appeals from the January 15, 2019 order denying Surety's motion to set aside the summary judgment against Surety on a $25,000 bail bond. Surety claims the court did not have jurisdiction to enter the summary judgment on the bond, because it lost jurisdiction over the bond on two prior occasions. We affirm.

Surety first claims the court lost jurisdiction over the bond on May 9, 2017, when the jury returned verdicts of conviction and the court allowed the defendant to remain released on bail pending judgment and sentence—without taking evidence or making express factual findings concerning the five factors listed in Penal Code section 1166.[1] Surety argues that the failure to comply with section 1166, by holding an evidentiary hearing and making express factual findings supporting an order continuing a defendant on bail (§ 1166), is a jurisdictional error which exonerates the bond by operation of law. We disagree. We conclude that the failure to comply with section 1166 does not exonerate the bond by operation of law. Pursuant to the terms of the bond, Surety agreed to be liable on the bond if the defendant failed to appear for judgment and sentence.

Alternatively, Surety claims the court lost jurisdiction over the bond on June 30, 2017, when the defendant failed to appear for judgment and sentence. At that time, the court declared the bond forfeited and continued sentencing to July 6, 2017. Surety

---

[1] Undesignated statutory references are to the Penal Code.

argues the court "held" the June 30, 2017 forfeiture, along with its hold on a bench warrant for the defendant's arrest, until July 6, 2017. Surety argues the court lost jurisdiction over the bond because it did not expressly declare the bond forfeited, in open court, on July 6, 2017 or at any later time. (§ 1305, subd. (a) [requiring bond forfeiture to be declared in open court if the defendant fails to appear in court as lawfully required].)

Surety's alternative claim fails because it misreads the record. The record plainly shows that the court did not "hold" its June 30, 2017 order declaring the bond forfeited. (§ 1305, subd. (a).) Rather, it only held the issuance of the bench warrant for the defendant's arrest, pending his appearance at the continued sentencing hearing on July 6, 2017. Thus, the court never lost jurisdiction over the bond and properly entered summary judgment on the bond against Surety.

## II. BAIL BOND STATUTES, OVERVIEW

Although bail proceedings occur in connection with criminal prosecutions, they are civil proceedings, independent from and collateral to the prosecutions. (*People v. American Contractors Indemnity Co.* (2004) 33 Cal.4th 653, 657.) "The object of bail and its forfeiture is to insure the attendance of the accused and his obedience to the orders and judgment of the court." (*People v. Wilcox* (1960) 53 Cal.2d 651, 656-657.) "[A] bail bond is a contract between the surety and the government whereby the surety acts as a guarantor of the defendant's appearance in court under the risk of forfeiture of the bond. [Citations.]" (*People v. Ranger Ins. Co.* (1994) 31 Cal.App.4th 13, 22.) Ultimately, if the defendant fails without sufficient excuse to appear in court as

3

lawfully required, the surety " 'must suffer the consequences' " and forfeit the bail. (*People v. Safety National Casualty Corp.* (2016) 62 Cal.4th 703, 709.)

Sections 1305 through 1308 govern the forfeiture of bail and related proceedings. (*People v. Safety National Casualty Corp.*, *supra*, 62 Cal.4th at p. 709.) The court is required to declare a bail forfeited "in open court" when a defendant released on bail fails without sufficient excuse to appear in court for arraignment, trial, judgment, or as otherwise lawfully required. (§ 1305, subd. (a).) The clerk is required to mail a notice of forfeiture of the bail to the appropriate parties, including the bail bond surety and its agent, if any. (§ 1305, subd. (b).) The 185-day period following the date the clerk mails the notice of forfeiture (180 days plus five days for mailing) is known as the appearance period. (*People v. American Contractors Indemnity Co.*, *supra*, 33 Cal.4th at p. 658.) If, during the appearance period, the defendant appears in court, the court is required to vacate the forfeiture and exonerate the bond. (§ 1305, subd. (c)(1).)

Upon a showing of good cause, the court may extend the appearance period by no more than an additional 180 days, provided the surety, bail agent, or depositor moves to extend the appearance period before it expires. (§§ 1305, subd. (j), 1305.4.) If the defendant is temporarily disabled, the court may also toll the appearance period. (§ 1305, subd. (e).) After the appearance period expires, the court has 90 days to enter summary judgment, against each bondsman named in the bond, for the amount of the bond plus costs. (§ 1306, subds. (a), (c).) If summary judgment is not entered within the 90-day period, the bond is exonerated by operation of law. (§ 1306, subd. (c).)

4

## III. FACTS AND PROCEDURE

In August 2016, the defendant, Lawrence Dumond Howard, was charged with two counts of making criminal threats (§ 422), among other charges and allegations. Several days later, Surety's bail agent, Bail Hotline Bail Bonds, posted a $25,000 bail bond to secure the defendant's appearance in court in all of the proceedings in his case, through the pronouncement of judgment and sentence. The defendant appeared in court for all of the pretrial and trial proceedings in his case.

Specifically, the defendant appeared in court on 14 separate days, including for his preliminary hearing and arraignment, and for his five-day jury trial, which concluded on May 9, 2017. But the defendant failed to appear in court on June 30, 2017, the day the court was to pronounce judgment and sentence.

On May 9, 2017, defendant was present in court when the jury found him guilty of two counts of making criminal threats. (§ 422.) Also on May 9, after the jury rendered its verdict, the defendant admitted three prison priors (§ 667.5, subd. (b)), the court scheduled sentencing for June 30, 2017, and referred the matter to the probation department for a presentence investigation and report.

At the conclusion of the May 9, 2017 proceedings, the court (Judge Jeffrey J. Prevost) addressed the prosecutor concerning the defendant's release on bail pending judgment and sentence: "I would suppose you're going to request a remand [of the defendant to custody], but it's my intent to leave [the defendant] out on bail. What's your pleasure?" The prosecutor responded: "I'm really torn on this one. He's got a pretty significant record . . . but he's appeared to every court date, and he does appear

5

to have some kind of physical ailment, so I'll submit to the court's ruling, . . ."  In response to the court's question, defense counsel confirmed that she was asking the court to allow the defendant to remain released on bail pending his sentencing.  The court ordered the defendant to remain released on bail pending judgment and sentence.

On June 30, 2017, when the court (Judge Prevost) called the defendant's case, defense counsel said the defendant was not present.  She explained that her calls to the defendant and to one of his family members, who usually gave him rides, were going "straight" to voicemail, but she had spoken to another family member who said that her mother and the defendant had left that morning to come to court, but that she, too, had since been unable to reach them.  Defense counsel then said, "*I'd just ask the court to hold a bench warrant so that I can determine if maybe he [the defendant] ended up with a medical issue or a car accident, something that prevented him from coming.*"  (Italics added.)  The court then asked the People to state its position.  The prosecutor said:  "*The People's position is a bench warrant should issue.*  This is the date for sentencing.  We don't have any specific information of why he's not here.  [¶]  The court already gave some pretty gracious relief allowing the defendant to be out of custody pending sentencing on a case where he was convicted of two strikes and three prison priors.  And, as the Court noticed from the probation report, he had six pages of criminal history dating back to 1970."  (Italics added.)

The court said it would be "willing to hold" a bench warrant "for a very short period of time" and continued sentencing to July 6, 2017, saying it would "like to keep [the continuance] shorter than two weeks."  The court then announced:  "*Bail is*

6

*ordered forfeit. Bench warrant in the nominal amount of $25,000. Hold to July 6th. I will call it at 8:30 [a.m.] in this department.*"[2]  (Italics added.)

On July 6, 2017, the defendant did not appear at his continued sentencing hearing, and the court released the bench warrant from its June 30 hold.  On January 23, 2018, the court granted the motion of Bail Hotline Bail Bonds to toll or extend the appearance period, to July 23, 2018.  On September 18, 2018, the court denied Surety's motion to vacate the forfeiture and exonerate the bond.  On October 12, 2018, the court entered summary judgment against Surety on the bond.

On December 11, 2018, Surety moved to set aside the summary judgment, vacate the forfeiture, and exonerate the bond.  Surety argued, as it argues in this appeal, that the court lost jurisdiction over the bond (1) on May 9, 2017, when the court allowed the defendant to remain on bail without conducting an evidentiary hearing and making factual findings under section 1166; and (2) when the court did not declare the bond forfeited *after* June 30, 2107, the day Surety claims the court "held the forfeiture" along with the bench warrant for the defendant's arrest.  The

---

**2**  The court's June 30, 2017 minute order shows that the bail was ordered forfeited on that date and that a $25,000 bench warrant for the defendant's arrest was issued but ordered held until July 6, 2017.  The record also contains a "notice of forfeiture of bail" and "certificate of mailing," showing that the court ordered the bail forfeited on June 30, 2017, and that the clerk mailed the notice of forfeiture to Surety and Bail Hotline Bail Bonds on June 30, 2017.  The register of actions also shows that the bail was forfeited on June 30.

People opposed the motion, and the court (Judge John M. Monterosso) denied it January 15, 2019.[3] Surety appeals.

## III. DISCUSSION

A. *The Court's Failure to Hold an Evidentiary Hearing and Make Express Factual Findings Under Section 1166 Did Not Exonerate the Bail, Constitute a Defense to Forfeiture, or Deprive the Court of Jurisdiction Over the Bond*

### 1. Section 1166

Section 1166 governs the continued release on bail of a defendant following the defendant's conviction by a general or special verdict and pending the court's pronouncement of judgment and sentence. (*People v. Seneca Ins. Co.* (2003) 29 Cal.4th 954, 956 (*Seneca*).) Section 1166 "requires the court to commit the defendant to custody unless, after considering five factors, the court concludes the evidence supports a decision to release the defendant on bail." (*Seneca*, at p. 957.) The statute "lists the public safety factors that may support a decision to allow an out-of-custody defendant to remain on bail after conviction pending sentencing." (*People v. Accredited Surety & Casualty Co., Inc.* (2004) 125 Cal.App.4th 1, 7 (*Accredited*).)

Section 1166 provides: "If a general verdict is rendered against the defendant, or a special verdict is given, he or she must be remanded, if in custody, or if on bail he or she shall be committed to the proper officer of the county to await the judgment of

---

[3] On January 14, 2019, the defendant appeared in court and was sentenced on his criminal case.

8

the court upon the verdict, *unless, upon considering [1] the protection of the public, [2] the seriousness of the offense charged and proven, [3] the previous criminal record of the defendant, [4] the probability of the defendant failing to appear for the judgment of the court upon the verdict, and [5] public safety, the court concludes the evidence supports its decision to allow the defendant to remain out on bail*.  When committed, his or her bail is exonerated, or if money is deposited instead of bail it must be refunded to the defendant or to the person or persons found by the court to have deposited said money on behalf of said defendant."  (Italics added.)

2.  Analysis

Surety claims that section 1166 creates a presumption that requires trial courts to commit on-bail defendants to custody, after they have been convicted by a general or special verdict, unless the court holds an evidentiary hearing and makes specific factual findings on the five factors listed in the statute, supporting the court's decision to allow the defendant to remain released on bail pending judgment and sentence.[4]  Surety also argues that the court's failure to comply with section 1166—by allowing a

_____

[4]  The People counter that section 1166, by its terms, does not require the court to take evidence, hold an evidentiary hearing, or make specific and express factual findings concerning the five factors relevant to the decision to continue the defendant on bail.  Rather, they argue that section 1166 only requires the court "consider" the five factors and determine, based on those factors, whether the evidence supports a decision to allow the defendant to remain released on bail.  (§ 1166.)  The People claim the court complied with section 1166 when, on May 9, 2017, it allowed the defendant to remain released on bail.  We do not disagree.  But the court did not hold an evidentiary hearing or make express factual findings supporting its order allowing the defendant to remain released on bail pending judgment and sentence.  Whether section 1166 required the court to do so is the issue Surety raises in this appeal.

verdict-convicted defendant to remain released on bail without conducting an evidentiary hearing and making express factual findings supporting the decision—has the effect of exonerating the bail by operation of law.

Surety's claims are not new. In *Seneca*, our Supreme Court held that section 1166 does not apply to defendants convicted by guilty pleas; rather, it only applies to defendants convicted by verdicts. (*Seneca*, *supra*, 29 Cal.4th at pp. 959, 963.) Because the defendant in *Seneca* was convicted by a guilty plea, and section 1166 did not apply to him, the court expressly declined to determine, as the surety argued, "whether compliance with section 1166 requires an evidentiary hearing with formal findings of fact" and whether the failure to comply with section 1166—in a case in which the statute applies—exonerates the bail by operation of law. (*Seneca*, at p. 957.)

No published decision has determined either of these issues. But here, too, it is unnecessary to determine whether section 1166 requires an evidentiary hearing and formal factual findings. Even if it does, the failure to comply with section 1166 does not exonerate the bail by operation of law, for several reasons.

First, section 1166 expressly provides that the commitment of the defendant "to the proper officer of the county to await the judgment of the court" exonerates the bail. The statute *does not provide* that the failure to comply with the statute—including the failure to hold an evidentiary hearing or make express factual findings supporting a decision to allow the defendant to remain released on bail pending judgment and sentence—exonerates the bail by operation of law.

10

Second, the continued release of a defendant on bail pending judgment and sentence under section 1166 does not exonerate the bail because it does not exonerate the surety's contractual obligation on the bail bond.  In California, bail bonds are contracts with the State of California.  (*Seneca*, *supra*, 29 Cal.4th at pp. 963-964.)  Pursuant to the defendant's bail bond, Surety expressly guaranteed the defendant's appearance, if he was convicted, at "pronouncement of judgment," and agreed to pay the State of California $25,000 if the defendant did not appear.  As in *Seneca*, "[n]othing in section 1166 abrogates [Surety's] contractual obligation" on the bail bond.  (*Id*. at p. 964.)

Third, the purpose of section 1166 is to protect public safety; it is not to protect sureties from their contractual liability on the bond in the event the verdict-convicted defendant fails to appear for judgment and sentencing.  The thrust of Surety's argument is that compliance with section 1166—and holding an evidentiary hearing and making express factual findings supporting a decision to continue an on-bail defendant released on bail—is necessary to protect the surety on the bond.

The legislative history of section 1166 was discussed in the majority opinion in *Seneca* and was discussed at further length in the dissenting opinion of Justice Chin.  (*Seneca*, *supra*, 29 Cal.4th at pp. 959 [lead opn. of Brown, J.] at pp. 967-970, 975-976 [dis. opn. of Chin, J.].)  As the majority in *Seneca* noted, section 1166 was amended in 1999 to read as it currently does.  (Stats. 1999, ch. 570, § 1.)  Before the 1999 amendment, section 1166 "stated only that, after conviction by verdict, an on-bail defendant '*may be* committed to the proper officer of the county.'  (Stats. 1935, ch.

11

657, § 5, p. 1814, italics added.)  Thus, the former version of section 1166 gave the trial court *unguided discretion* as to whether to commit an on-bail defendant to custody or permit him or her to remain free.  The 1999 amendment, however, *requires* the court to commit the defendant to custody unless, after considering five factors, the court concludes the evidence supports a decision to release the defendant on bail." (*Seneca*, *supra*, 29 Cal.4th at p. 957, italics added.)  Section 1166 also created a *presumption* in favor of committing the verdict-convicted defendant to custody—a presumption that is only overcome if the five-factor test of section 1166 is satisfied. (*Seneca*, at p. 959.)  Surety stresses that the language of section 1166, and its presumption in favor of committing convicted defendants to custody, shows that holding an evidentiary hearing and making express factual findings concerning the five factors listed in the statute is the only way that the presumption in favor of commitment can be overcome.

In his dissenting opinion, Justice Chin concluded that section 1166 applies to *all* convicted defendants, including defendants convicted by guilty pleas, and not only verdict-convicted defendants.  (*Seneca*, *supra*, 29 Cal.4th at pp. 964-965 (dis. opn. Chin, J.).)  Justice Chin stressed that the Legislature's purpose in amending section 1166 in 1999 was to *increase public protection* by requiring the court to commit a convicted defendant to custody unless the statute's five-part test is satisfied.  (*Id*. at p. 967-971.)  He explained that the legislative history of the 1999 amendment showed that the Legislature viewed all convicted defendants as " 'pos[ing] a greater flight risk than other persons on bail,' " and therefore amended section 1166 to require courts to

consider the fact of the defendant's conviction before allowing the convicted defendant to remain out on bail. (*Id*. at p. 975.)

Ultimately, Justice Chin did not disagree with the majority's result, that is, with its denial of the surety exoneration claim. He expressed "serious doubt that a trial court's failure to follow section 1166 in permitting a convicted defendant to remain out on bail requires exoneration of a surety's bond when the defendant fails to appear. As demonstrated, the Legislature passed the statute to protect the public, not sureties." (*Seneca*, *supra*, 29 Cal.4th at pp. 977-978 (dis. opn. Chin, J.).) Because section 1166 was designed to protect public safety, not sureties, and the failure to comply with section 1166 does not abrogate the surety's contractual obligation on the bail bond, the court's failure to comply with section 1166 in this case, if any, did not exonerate the bail.

Fourth, a court's failure to comply with section 1166 is not listed among the statutory grounds for exonerating a bail bond. (See., e.g, §§ 980, subd. (b), 1000.2, subd. (b), 1116, 1188, 1296, 1305, subds. (c)(1)-(3), (d), (f), (g), 1371, 1384.) The *Accredited* court reached the same conclusion concerning section 1275. (*Accredited*, *supra*, 125 Cal.App.4th at p. 6.) Section 1275 requires the judge or magistrate to consider several factors in setting, reducing, or denying bail: "the protection of the pubic, the seriousness of the offense charged, the previous criminal record of the defendant, and the probability of his or her appearing at trial or at a hearing of the case. The public safety shall be the primary consideration." (§ 1275.) Section 1166 requires the trial court to consider the same factors in determining whether to allow the

13

defendant to remain released on bail following the defendant's conviction, but also requires the court to consider the seriousness of the defendant's conviction, that is, "the seriousness of the offense charged *and proven*" and "public safety." (§ 1166, italics added.)

The surety in *Accredited* claimed that its liability on the bail bond was discharged because the trial court did not comply with section 1275 in reducing the defendant's bail. (*Accredited*, *supra*, 125 Cal.App.4th at p. 6.) The court concluded that "noncompliance with section 1275 is not a cognizable ground for exoneration nor a defense to forfeiture of a bail bond." (*Ibid*.) The court reasoned that the plain language of section 1275 showed that the statute had "nothing to do with bail bonds," including their exoneration or forfeiture; rather, the purpose of the statute was to protect public safety; nothing in the statute abrogated the surety's contractual duty to pay the bail amount when the defendant failed to appear; and the failure to comply with section 1275 is not among the statutory grounds for exoneration. (*Accredited*, at pp. 6-8.) All of the same is true of section 1166.

B.  *The Court Did Not "Hold" the Bail Forfeiture on June 30, 2017*

Surety alternatively claims that the court "held" the bail forfeiture, along with the bench warrant, when the defendant failed to appear for his originally scheduled sentencing hearing on June 30, 2017. Surety claims that the court failed to *later* declare the bond forfeited, in open court, as section 1305, subdivision (a), required. Thus, Surety claims the court lost jurisdiction over the bond on June 30, 2017, and did not have jurisdiction to later enter summary judgment against Surety on the bond.

14

Surety's argument misreads the record of the June 30, 2017 proceedings. Near the conclusion of those proceedings, the court stated: "*Bail is ordered forfeit. Bench warrant in the nominal amount of $25,000. Hold to July 6th.* I will call it at 8:30 [a.m.] in this department." (Added italics.) Surety maintains that the court's statements show that it "held" the forfeiture, along with the bench warrant, until July 6, 2017. It is undisputed that the court did not later declare the bond forfeited. (§ 1305, subd. (a).)

The record of the June 30, 2017 proceeding, discussed in detail *ante*, shows that the court and parties discussed holding the bench warrant for the defendant's arrest. But they did not discuss holding the bond forfeiture. The record plainly shows that there was *no question* of holding the bond forfeiture, even though defense counsel indicated to the court that the defendant *may* have had sufficient excuse for his failure to appear. (§ 1305.1.) Additionally, the court's June 30, 2017 minute order shows that the court declared the bond forfeited on June 30, and the clerk of court mailed notice of the forfeiture to Surety and its bail agent on June 30.[5] Thus, the court did not lose jurisdiction over the bond, for failing to declare it forfeited (§ 1305, subd. (a)), and properly entered summary judgment on the bond against Surety.

---

[5] See footnote 2, *ante*.

15

## V. DISPOSITION

The January 15, 2019 order denying Surety's motion to set aside the summary judgment against Surety on the bond is affirmed. The People shall recover their costs on appeal. (Cal. Rules of Court, rule 8.278.)

CERTIFIED FOR PUBLICATION

FIELDS
J.

We concur:

CODRINGTON
Acting P. J.

MENETREZ
J.

16