Filed 5/17/21  P. v. Financial Casualty & Surety CA2/4

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>FINANCIAL CASUALTY &<br>SURETY, INC.,<br><br>    Defendant and Appellant. | B297049<br>(Los Angeles County<br> Super. Ct. No. OSJ2146) |

APPEAL from orders of the Superior Court of Los Angeles County, Victoria B. Wilson, Judge.  Affirmed.

Law Office of John Rorabaugh, Crystal L. Rorabaugh and John Mark Rorabaugh for Defendant and Appellant.

Office of the County Counsel, Rodrigo A. Castro-Silva, Acting County Counsel, Adrian G. Gragas, Assistant County Counsel, and Michael J. Gordon, Deputy County Counsel, for Plaintiff and Respondent.

## INTRODUCTION

Appellant Financial Casualty & Surety, Inc. (Financial Casualty) executed a bail bond to secure the release from custody of criminal defendant Jose Geronimomendez, promising to guarantee Geronimomendez's appearance in court or pay $60,000, the amount at which bail had been previously set by the court. After Geronimomendez failed to appear, the trial court ordered the bond forfeited and later signed and entered summary judgment against Financial Casualty on the bond.

Financial Casualty moved to set aside the judgment under Code of Civil Procedure section 473, subdivision (d). It argued that the judgment was void because the court failed to inquire into Geronimomendez' ability to pay bail, as required by *In re Humphrey* (2018) 19 Cal.App.5th 1006 (*Humphrey*), review granted May 23, 2018, ordered to have partial precedential effect August 26, 2020, S247278, affd. (2021) 11 Cal.5th 135. Financial Casualty did not argue that the court failed to "enter" summary judgment as required by Penal Code section 1306,[1] or that the bond should not be enforced under principles of unconscionability. The court denied the motion on six separate grounds, including that even if *Humphrey* error had occurred, it did not abrogate Financial Casualty's obligations under the bond.

On appeal from the court's order denying its motion, Financial Casualty contends the court erred because: (1) the court did not "enter"

---

[1]     Undesignated references to statutes are to the Penal Code.

2

judgment within the 90-day statutory period as set forth under section 1306, subdivisions (a) and (c); (2) the court violated *Humphrey's* requirement in setting bail, rendering the judgment entered on the bond void; and (3) the bail-setting order was an unconscionable contract between Geronimomendez and the state.

We reject these contentions. As reflected on the file-stamped order granting summary judgment, the trial timely entered judgment on the bond. Any failure by the trial court to consider Geronimomendez's ability to pay bail, even if erroneous, did not void the bond or judgment entered thereon. Finally, the unconscionability claim has been forfeited by Financial Casualty's failure to raise it below, and, in any event, the claim is meritless because it is directed at a judicial order rather than a contract. We affirm the orders granting summary judgment and denying the motion to set aside the summary judgment.

## BACKGROUND

1. *The Judgment on the Bail Bond*

In February 2017, the People charged Jose Geronimomendez with possession or purchase for sale of a controlled substance, and transportation or importation of a controlled substance. The trial court set bail in the amount of $60,000 in reliance on the bail schedule without inquiring into his ability to pay.

Financial Casualty executed a bail bond on March 6, 2017. In exchange for the People's release of Geronimomendez from custody, Financial Casualty promised to pay $60,000 if he failed to appear as required by order of the court. Financial Casualty also agreed that if

3

forfeiture of the bond was ordered by the court, judgment could be summarily made and entered against it.

Following his release from custody, on May 26, 2017, Geronimomendez failed to make a required court appearance. The same day, the court ordered bail forfeited and issued a bench warrant. The court mailed notice of forfeiture to Financial Casualty on May 30, 2017. On December 29, 2017, the court granted Financial Casualty's motion to extend the period within which it could seek to exonerate the bond to June 27, 2018.

On June 29, 2018, upon application by the clerk of court, the court signed an order granting the People summary judgment against Financial Casualty in the amount of $60,000 plus court costs. The court signed the judgment as of June 29, 2018. The judgment bears a preprinted file stamp indicating that it was "FILED AND ENTERED" by Jessica Flores, deputy clerk on behalf of "Sherri R. Carter, Executive Officer/Clerk." No date appears on the file stamp.

The same day, a "notice of entry of judgment on forfeited bond and demand for payment" was file-stamped and entered by a deputy clerk and executive officer/clerk. The notice of entry of judgment listed the case number, bond number, date of judgment entered, amount of bond and court costs, the total amount due, and where payment could be made. On July 3, 2018, the court clerk mailed the notice of entry of judgment to Financial Casualty and its bail agent.

4

2.    *The Motion to Set Aside the Judgment*

On July 31, 2018, Financial Casualty filed a motion under Code of Civil Procedure section 473 to set aside summary judgment, discharge forfeiture, and exonerate bail. Relying on *Humphrey*, Financial Casualty argued that the court had acted in excess of jurisdiction by setting the amount of bail without inquiring into Geronimomendez's ability to pay.

In opposition to the motion, the People argued that any error in setting bail, including *Humphrey* error, did not render the bond void or result in exoneration of bail. The People also argued that Financial Casualty lacked standing to assert Geronimomendez's constitutional rights, and *Humphrey* could not be applied retroactively in the manner requested.

In its reply, Financial Casualty generally repeated the arguments it had made in its motion, and purported to rebut the People's position that it did not have standing to challenge the setting of bail and that *Humphrey* should not apply retroactively.

At the hearing on its motion, Financial Casualty submitted on the briefing, and the court took the matter under submission.

3.    *The Trial Court's Ruling*

On February 15, 2019, the court denied the motion to set aside the judgment. The court premised its ruling on the following grounds: (1) *Humphrey* does not "abrogate[] the surety's contractual duty to pay the bond amount it is obliged to pay due to Defendant's failure to

5

appear as it guaranteed"; (2) Financial Casualty lacked standing to assert the constitutional rights of Geronimomendez; (3) the Supreme Court's grant of review in *Humphrey* means it is no longer binding authority; (4) *Humphrey* did not apply retroactively to cases in which a criminal defendant posted bail and fled; (5) Financial Casualty mischaracterized caselaw for the proposition that the state had conceded its bail system was unconstitutional; and (6) the court lacked authority to rule that another trial judge had erred in setting bail.[2]

Financial Casualty filed a timely notice of appeal.

## DISCUSSION

Financial Casualty contends: (1) the trial court lost jurisdiction over the bond because it did not "enter" judgment on the bond; (2) the court's order denying the motion to set aside the judgment was erroneous, because the court had violated *Humphrey* when setting bail; and (3) the court's bail-setting order constituted an unconscionable contract between Geronimomendez and the state. None of these contentions has merit.

1. *Governing Law*

"While bail bond proceedings occur in connection with criminal prosecutions, they are independent from and collateral to the

---

[2] Commissioner Sheryl Beasley set Geronimomendez's bail. Financial Casualty's motion to set aside the judgment was denied by Judge Victoria B. Wilson.

6

prosecutions and are civil in nature. [Citation.] 'The object of bail and its forfeiture is to insure the attendance of the accused and his obedience to the orders and judgment of the court.' . . . Nevertheless, the 'bail bond is a contract between the surety and the government whereby the surety acts as a guarantor of the defendant's appearance in court under the risk of forfeiture of the bond.'" (*People v. American Contractors Indemnity Co.* (2004) 33 Cal.4th 653, 657.)

When a criminal defendant for whom a bail bond has been posted fails without sufficient excuse to appear as required, the trial court must declare a forfeiture of the bond. (§ 1305, subd. (a)(1).) The surety that posted the bond then has a statutory "appearance" period in which to either produce the accused in court and have the forfeiture set aside, or demonstrate other circumstances requiring the court to vacate the forfeiture. (§ 1305, subd. (c)(1); *People v. Western Ins. Co.* (2012) 204 Cal.App.4th 1025, 1030.) For a bond exceeding $400, the appearance period is 185 days (180 days plus five days for service by mail). (§ 1305, subd. (b)(1).) The court may, upon the surety's motion demonstrating good cause, extend the appearance period for up to an additional 180 days. (§ 1305.4.)

When a bond is forfeited and the appearance period lapses without forfeiture having been set aside, the court "shall enter a summary judgment" in the amount of the bond plus costs. (§ 1306, subd. (a).) The clerk of court in which the judgment is rendered must serve notice of entry of judgment on the surety and any of its agents within five days after the date of entry of summary judgment. (§§ 1306, subd. (b), 1308, subd. (b).) If summary judgment is not entered within

7

90 days after the date upon which it may first be entered, "the right to do so expires and the bail is exonerated." (§ 1306, subd. (c).)

Ordinarily, we review an order denying a motion to vacate the forfeiture of a bail bond for abuse of discretion. (*People v. Financial Casualty & Surety, Inc.* (2019) 39 Cal.App.5th 1213, 1219 (*Financial Casualty*).) When the appellate court is deciding only legal issues, however, it conducts an independent review. (*Ibid.*) If there are factual disputes, "the trial court's findings of fact will be upheld under the abuse of discretion standard when those findings are supported by substantial evidence." (*People v. Accredited Surety Casualty Co.* (2014) 230 Cal.App.4th 548, 555.)

2. *Entry of Judgment Claim*

Financial Casualty contends that the court lost jurisdiction over the bond because it did not "enter" summary judgment within the timeframe under subdivision (c) of section 1306. Financial Casualty's claim is based solely on the premise that the order granting summary judgment was missing a file-stamped date, the appearance of which Financial Casualty asserts is required under the statutes governing entries of judgment. As we shall discuss, the interpretation suggested by Financial Casualty is wrong.

"[P]rior to 1974, entry of judgment was governed exclusively by Code of Civil Procedure section 668, which required each county to maintain a judgment book" in which judgments were required to be entered. (*County of Los Angeles v. Ranger Ins. Co.* (1994) 26

8

Cal.App.4th 61, 63, fn. omitted (*Ranger Ins. Co.*).) In 1974, the Legislature enacted Code of Civil Procedure section 668.5, which as originally enacted permitted counties to cease use of judgment books so long as they microfilmed judgments before placing them in the court file. (*Ibid.*) The current version of section 668.5 allows for additional methods of maintaining judgments as follows: "In those counties where the clerk of the court places individual judgments in the file of actions and either a microfilm copy of the individual judgment is made, or the judgment is entered in the register of actions, or into the court's electronic data-processing system, prior to placement of the judgment in the file of actions, the clerk shall not be required to enter judgments in a judgment book, and the date of filing the judgment with the clerk shall constitute the date of its entry."

To the extent that Financial Casualty argues that the order granting summary judgment was not "entered," we disagree. Nothing in section 668.5 conditions entry of a judgment on the existence of a dated file stamp. All that is required for the entry of judgment is the act of filing the judgment with the clerk. (*United Farm Workers of America v. Agricultural Labor Relations Bd.* (1985) 37 Cal.3d 912, 918; see *Filipescu v. California Housing Finance Agency* (1995) 41 Cal.App.4th 738, 741 ["in Los Angeles County, which does not maintain a judgment book, the entry of the judgment occurs upon the filing of the document"]; *Ranger Ins. Co.*, *supra*, 26 Cal.App.4th at p. 65 ["no subsequent action is required to effect entry of judgment" after filing the judgment].) That is precisely what occurred in this case. The judgment in this case bears a file stamp indicating that it was "FILED

AND ENTERED" by "Jessica Flores," deputy clerk on behalf of "Sherri R. Carter, Executive Officer/Clerk."

To the extent Financial Casualty argues that the order granting summary judgment was not timely filed under section 1306 because it was missing a file-stamp date, we also disagree. Nothing in section 668.5 requires a file-stamp date; all that is required to ascertain the date of entry is "the date of filing the judgment with the clerk." Though a file-stamp date is one means of determining the date of entry of judgment (see *Palmer v. GTE California, Inc.* (2003) 30 Cal.4th 1265, 1267, fn. 2), it is not the only means for making that determination. *Ranger Ins. Co.*, *supra*, 26 Cal.App.4th 61, a case on which Financial Casualty has relied, ascertained the date of entry of judgment from the date appearing on the summary judgment itself. (See *id.* at p. 64 [date of entry of summary judgment on bail forfeiture was that date appearing on the "file-stamped summary judgment" in the court file]; see also *Carlson v. Department of Fish & Game* (1998) 68 Cal.App.4th 1268, 1281 ["[t]he failure of the clerk to endorse the correct date on the document . . . cannot change the date on which the paper was legally filed"].)

The record in this case establishes an entry of judgment date of June 29, 2018, which was well within the statutory mandate under section 1306, subdivisions (a) and (c). The judgment itself contains a handwritten date of June 29, 2018; the notice of entry of judgment filed on the same day states that summary judgment "was entered on" June 29, 2018; and the chronological index in our appellate record reflects a "[f]iling date" of June 29, 2018. Thus, because the file-stamped

10

judgment was filed on June 29, 2018, it was timely entered within the timeframe afforded the court under section 1306.

3. *Humphrey Claim*

Financial Casualty contends that the trial court erroneously denied its motion to set aside the judgment because the court had previously violated *Humphrey*'s requirements in setting bail, rendering the judgment entered on the bail bond void.

The trial court properly rejected this claim as a ground for setting aside the judgment under Code of Civil Procedure section 473, subdivision (d). Assuming arguendo that the court had committed *Humphrey* error in the bail-setting proceedings, the error did not void the judgment entered on the bond. "Time and again, courts have ruled that errors in a trial court's setting of bail during the criminal prosecution do not let the surety off the hook in the collateral bail proceedings." (*People v. The North River Ins. Co.* (2020) 48 Cal.App.5th 226, 235 (*North River*); see e.g., *Financial Casualty*, *supra*, 39 Cal.App.5th at pp. 1223–1227 [unconstitutional imposition of bail condition requiring defendant to waive Fourth Amendment rights]; *People v. Accredited Surety & Casualty Co., Inc.* (2004) 125 Cal.App.4th 1, 6–8 [failure to consider statutory factors bearing on amount of bail]; *Continental Casualty Company v. State of California* (1974) 41 Cal.App.3d 259, 260–262 (*Continental Casualty*) [unconstitutional addition of penalties to amount of bail].) *Humphrey* error is no different. (See *People v. Accredited Surety & Casualty Co.* (2019) 34

11

Cal.App.5th 891, 899 [surety remained liable on bail bond regardless of any *Humphrey* error in bail-setting procedure]; *North River, supra*, at p. 234 [same]; *People v. American Surety Co.* (2020) 55 Cal.App.5th 265, 271 (*American Surety*) [same].)

Consistent with the weight of authority and our prior decisions on this issue, we adopt the reasoning set forth in *North River* and related cases. A judgment is void only if the court acts without "'fundamental authority over the subject matter, question presented, or party.'" (*North River, supra*, 48 Cal.App.5th at p. 233.) The same cannot be said when the court fails to comply with certain procedural requirements; in such instances, the court acts in excess of jurisdiction. (*Ibid.*) The disposition reached in *Humphrey*—remand to the trial court with instructions to consider additional matters bearing on a new bail hearing—suggests that the court found only a procedural error, not an absence of fundamental authority. (See *Humphrey, supra*, 19 Cal.App.5th at pp. 1047–1049.)

Here, Financial Casualty has stated that in "the present case [the] unconstitutional setting of the bail amount was *in excess of* the court's fundamental power." (Italics added.) Acts in excess of a court's jurisdiction render the judgment entered thereon voidable and not void. (*North River*, *supra*, 48 Cal.App.5th at p. 233.) Only void judgments and orders may be set aside under Code of Civil Procedure section 473, subdivision (d); voidable judgments or orders may not. (*Id.* at p. 234; *Vitatech Internat., Inc. v. Sporn* (2017) 16 Cal.App.5th 796, 807.)

Moreover, policy considerations support holding Financial Casualty to its bargain. Granting Financial Casualty the relief it seeks would allow sureties like it "to have their cake and eat it too." (*North River*, *supra*, 48 Cal.App.4th at p. 239.) "[W]e would be loath to sustain [the surety's] argument because it would produce the anomalous result that [it] would reap a windfall, keeping the bond premium without running any risk of being held to account on the bond" in the event the bailee fails to appear. (*American Surety*, *supra*, 55 Cal.App.5th at p. 272; accord, *Continental Casualty*, *supra*, 41 Cal.App.3d at p. 262.)

None of the cases on which Financial Casualty has relied persuade us otherwise. Several cases are unrelated to bail bonds. (See *Timbs v. Indiana* (2019) 139 S.Ct. 682, 686 [civil in rem forfeiture action to obtain criminal defendant's vehicle]*; Nelson v. Colorado* (2017) 137 S.Ct. 1249, 1252 [fees, costs, and restitution exacted from criminal defendants]; *WRI Opportunity Loans II, LLC v. Cooper* (2007) 154 Cal.App.4th 525, 530 [secured commercial property loan]; *Alshafie v. Lallande* (2009) 171 Cal.App.4th 421, 423 [posting of undertaking to secure costs]; *Taylor v. Exnicious* (1925) 197 Cal. 443, 445–447 [receiver's bond]; *Shaugnnessy v. American Sur. Co.* (1903) 138 Cal. 543, 544–546 [contractor's bond]; *Coburn v. Townsend* (1894) 103 Cal. 233, 235 [bond in condemnation proceedings].) Another case addressed a bail bond voided by the court's unilateral change of its terms after its execution. (*People v. Lexington National Ins. Corp.* (2015) 242 Cal.App.4th 1098, 1103–1105.) Others involved defects in bail bonds themselves, rather than errors in the underlying bail-setting procedure.

13

(See *People v. Accredited Surety & Casualty Co.* (2012) 209 Cal.App.4th 617, 622 [bond increased bail beyond amount fixed by court, and was unsupported by consideration because defendant was not in custody and therefore could not be released in exchange for surety's promise], disapproved on another ground in *County of Los Angeles v. Financial Casualty & Surety, Inc.* (2018) 5 Cal.5th 309; *People v. International Fidelity Ins. Co.* (2012) 204 Cal.App.4th 588, 595 [partial consideration for bond—the reduction of risk by the purported existence of a prior bond—held invalid, as prior bond had been exonerated by operation of law upon defendant's remand to custody]; *County of Merced v. Shaffer* (1919) 40 Cal.App. 163, 167–168 [bond increased bail beyond amount fixed by court, and failed to promise sureties would pay it].) Yet another case involved bail set not by the court, but by the court clerk. (*City and County of San Francisco v. Hartnett* (1905) 1 Cal.App. 652, 653–656.)[3]

---

[3] Other cases cited by Financial Casualty did not address circumstances in which a bond or other judgment or order was void. (See, e.g., *Buffin v. City and County of San Francisco* (N.D.Cal. Oct. 19, 2019) No. 15-CV-04959-YGR, 2019 WL 1017537, at *1, *16–24 [bail schedule violated due process and equal protection principles; the California Bail Agents Association granted permissive intervention to *defend* constitutionality of bail and bail schedules]; *In re Avignone* (2018) 26 Cal.App.5th 195, 198 [abuse of discretion to increase defendant's bail in violation of *Humphrey* and the Eighth Amendment and article 1, section 12 of the state constitution]; *Lopez-Valenzuela v. Arpaio* (9th Cir. 2014) 770 F.3d 772, 775, 791–792 [absolute denial of bail for undocumented immigrants violated substantive due process]; *People v. Lexington National Ins. Corp.* (2010) 181 Cal.App.4th 1485, 1489 [discussing requirements for exoneration of bail]; *County of Los Angeles v. American Contractors Indemnity Co.* (2007) 152 Cal.App.4th 661, 666 [same]; *Kiperman v. Klenshetyn* (2005) 133 Cal.App.4th 934, 939–940 [abuse of discretion to order surety to return premiums on two bail bonds, where surety did not

In sum, if *Humphrey* error occurred, it did not void the judgment. The trial court properly rejected Financial Casualty's claim as a ground for setting aside the judgment under Code of Civil Procedure section 473, subdivision (d).[4]

4. *Unconscionability Claim*

Financial Casualty also contends the trial court erred in denying its motion to set aside the judgment because the bail-setting order was an unconscionable contract between Geronimomendez and the state.

Financial Casualty has forfeited this claim for its failure to raise the issue in the trial court. (See, e.g., *Bikkina v. Mahadevan* (2015) 241 Cal.App.4th 70, 92 (*Bikkina*).) The failure of Financial Casualty to raise the issue below deprived the People of notice of any need to develop the record with evidence bearing on unconscionability. (See Civ. Code, § 1670.5, subd. (b) [upon claim that a contract is unconscionable, "the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose, and effect to aid the court in making the determination"]; see also *Carbajal v. CWPSC, Inc.* (2016) 245 Cal.App.4th 227, 23 [though unconscionability is ultimately a question of law, """numerous factual issues may bear on that question"""].) It would therefore be unfair to the People to reach

---

surrender defendant on first bond and surrendered him with good cause on second].)

[4] In light of our conclusion that any *Humphrey* error did not void the judgment, we do not address the People's alternative arguments.

15

the merits of Financial Casualty's unconscionability claim on appeal. (See *Bikkina*, *supra*, at p. 93 [declining to review forfeited contention "[g]iven that the parties did not develop the factual record below to allow for a fair review"].)

Even assuming Financial Casualty has preserved its unconscionability claim for appeal, we find it meritless as a matter of law. The claim is directed at the bail-setting order, which Financial Casualty has consistently characterized as a contract between Geronimomendez and the state.[5] But the bail-setting order was not a contract because it did not require Geronimomendez's consent. (See Civ. Code, § 1550 [mutual consent is essential element of any contract];

---

[5] Financial Casualty spends considerable time in its briefs arguing that *North River* and similar cases misunderstood the contractual relationships between a criminal defendant, the surety, and the state. In this regard, Financial Casualty's briefs are long on inapposite authority, and short on case-specific analysis. In fact, Financial Casualty *properly* characterized the relevant contractual relationships in its motion to set aside summary judgment: "As between the surety and the [defendant], the surety promises to arrange for the principal's conditional liberty in exchange for the [defendant's] promise of payment. As between the surety and the [state], the surety promises to produce the person of the [defendant], or a sum certain in his stead, at time of trial in exchange for the [state's] promise to permit the surety to arrange for the [defendant's] conditional liberty while at the same time exercising constructive custody over him." (Compare *North River*, *supra*, 48 Cal.App.5th at p. 235 ["[b]ail is a function of 'two different contracts between three different parties'—namely, (1) a contract between a criminal defendant and a surety under which the surety posts a bail bond in exchange for the defendant's payment of a premium and his promise to pay the full amount of the bond in the event of his nonappearance, and (2) a contract between the surety and the People under which the surety "'"act[s] as a guarantor of the defendant's appearance in court under risk of forfeiture of the bond"'"""].)

16

*Monster Energy Co. v. Schechter* (2019) 7 Cal.5th 781, 789 [same].)  In the bail bond context, the defendant and the state do not contract with each other; rather, they each contract with the surety.  (*North River, supra,* 48 Cal.App.5th at p. 235.)

## DISPOSITION

The orders granting summary judgment and denying Financial Casualty's motion to set aside the judgment are affirmed.

**CERTIFIED FOR PUBLICATION**

WILLHITE, J.

We concur:

MANELLA, P. J.

CURREY, J.