Filed 11/2/23  P. v. Luna CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(Sacramento)

----

|  |  |
|---|---|
| THE PEOPLE, | C097663 |
| Plaintiff and Respondent, | (Super. Ct. No. 00F03872) |
| v. | |
| BENITO JULIAN LUNA, JR., | |
| Defendant and Appellant. | |

In 2001, following a bench trial, defendant Benito Julian Luna, Jr., was convicted of first-degree murder and attempted robbery.  In 2003, in an unpublished opinion, a different panel of this court upheld the conviction.  (*People v. Luna* (July 23, 2003, C040342) [nonpub. opn.] (*Luna*).)

1

In January 2022, defendant filed a petition for resentencing under Penal Code former section 1170.95[1] (renumbered as section 1172.6).[2] The resentencing court denied the petition at the prima facie stage, concluding that defendant is ineligible for relief because the original trial judge's factual findings establish that defendant was the actual killer in this single-victim homicide.

Defendant argues the resentencing court erred and violated his constitutional rights by relying on the original trial judge's factual findings, which, he contends, are outside the record of conviction. Because we conclude the resentencing court properly considered the factual findings, and those findings conclusively establish that defendant was the actual killer, we affirm.

FACTUAL BACKGROUND

The following summary of the underlying facts is taken from our prior unpublished opinion in defendant's direct appeal, *Luna, supra*, C040342).[3] We provide this summary solely for the purpose of providing context and do not otherwise rely on the facts for our analysis.

"On the evening of April 30, 2000, Christina Connery and Brandon and Aryan Carrafa held a party at their apartment to celebrate a friend's birthday. Several guests were present, including the murder victim, Adam Todd.

"Brandon and a friend went to a nearby store to get some drinks and snacks. On their way back, they passed defendant and two other men who were all wearing knit caps

---

[1]    Undesignated statutory references are to the Penal Code.

[2]    Effective June 30, 2022, former section 1170.95 was renumbered and recodified as section 1172.6 with no substantive change in the text. (Stats. 2022, ch. 58, § 10.) For clarity, we refer to former section 1170.95 by its new designation.

[3]    We granted defendant's motion to incorporate by reference the record of his prior direct appeal. (Cal. Rules Court, rule 8.147(b).)

(or possibly rolled-up ski masks).  Because the apartment had been robbed by three men just a few weeks earlier, Brandon became concerned.  Thus, after Brandon and his friend returned to the apartment, they told the others that there might be another robbery.

"Aryan retrieved a gun and went with many of the others to the back bedroom.  And sure enough, the robbers entered the apartment after kicking in the front door.  One robber, who was wearing a ski mask, pushed open the bedroom door, and Aryan shot him.  The robber moaned and fell back, and the door shut.  Another shot was thereafter heard.  Adam Todd's body was later found on the floor in the living room.  He had been shot from no more than one foot away, and the bullet had entered his back in a downward angle.  It was determined that the bullet could not have been fired from Aryan's gun.

"Later that same night, defendant's wife asked a nursing student who lived down the street to come to their home.  When she arrived, she saw that defendant had a wound above his right clavicle.  She told defendant that she thought it was a bullet wound, but he told her to just fix it.  She cleaned and dressed the wound and told him to see a doctor.

"At trial, Brandon identified defendant, based on his appearance, as the robber who had been shot.  Christina Connery identified defendant as one of the three robbers who came into the apartment, and another guest identified defendant as one of the three men that he and Brandon had passed before the robbery.

"Defendant eventually confessed to police.  He admitted that he had kicked in the apartment door and that a man in the back bedroom had shot him.  He claimed, however, that after being shot, he accidentally discharged the shot that killed the victim.  At defendant's request, his wife recovered the gun that he claimed he had used and gave it to police.  It was determined that the bullet that killed the victim could have been fired from that gun." (*Luna, supra*, C040342.)

PROCEDURAL BACKGROUND

In November 2000, the district attorney charged defendant by felony complaint with the murder of Adam Todd (§ 187, subd. (a)—count one) and attempted robbery.

3

(§§ 664, 211—count two.)  It was further alleged as to the murder count that defendant personally and intentionally discharged a firearm causing great bodily injury to Adam Todd (§ 12022.53, subd. (d)), and that the offense was committed while defendant was engaged in the attempted commission of the crime of robbery within the meaning of section 190.2, subdivision (a)(17).  It was further alleged as to the attempted robbery count that defendant personally and intentionally discharged a firearm.  (§ 12022.53, subd. (c).)  Defendant pleaded not guilty to the charges and denied the allegations. Defendant and the People waived a jury trial.

In December 2001, following a bench trial, the trial court found defendant guilty as charged.  In doing so, the court made specific factual findings, including that "the prosecution has proved beyond a reasonable doubt that the defendant's guilty of the crime of murder in first degree[] in that the evidence proved beyond a reasonable doubt that the defendant . . . personally shot and killed Adam Todd during the commission of [an] . . . attempted robbery which was being committed by the defendant at the time of the homicide."  The court also specifically found, with respect to the section 12022.53, subdivision (d) firearm enhancement, that defendant personally and intentionally discharged a firearm causing the death of Adam Todd.

In January 2002, defendant was sentenced on count one (murder) to a term of life without the possibility of parole, plus a consecutive term of 25 years to life for the section 12022.53, subdivision (d) firearm enhancement.  On count two (attempted robbery), the trial court imposed the midterm of two years, plus a consecutive term of 20 years to life for the section 12022.53, subdivision (c) firearm enhancement.  The court stayed the execution of the sentence imposed for count two under section 654.

In February 2002, defendant appealed, arguing that his confession to the police was involuntary and that the trial court erred by admitting it over his objection.  (*Luna, supra*, C040342.)  We disagreed and affirmed the judgment.  (*Ibid*.)

4

On January 21, 2022, defendant filed a petition for resentencing under section 1172.6. The People filed a response to the petition, and defendant filed a reply.

In December 2022, after a contested prima facie hearing, the trial court filed a written order denying the petition. Defendant timely appealed the order denying his petition.

LEGAL BACKGROUND

Effective January 1, 2019, the Legislature passed Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437) "to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).)

As amended by Senate Bill 1437, section 188, subdivision (a)(3), now prohibits imputing malice based solely on an individual's participation in a crime and requires proof of malice to convict a principal of murder except under the revised felony-murder rule as set forth in section 189, subdivision (e). (§ 188, subd. (a)(3).) Senate Bill 1437 also limited application of the felony-murder rule by amending section 189, subdivision (e) to provide that a defendant can be convicted under a felony-murder theory only if he or she was the actual killer; or, with the intent to kill, assisted in the commission of the murder; or was a major participant in the underlying felony and acted with reckless indifference to human life. (§ 189, subd. (e)(1)-(3).)

In addition, Senate Bill 1437 created a procedural mechanism for those convicted of murder under the prior law, but who could not have been convicted under the new law, to seek retroactive relief. (§ 1172.6.) "Under section 1172.6, the process begins with the filing of a petition declaring that '[t]he petitioner could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189' made by Senate Bill 1437. [Citation.] The trial court then reviews the petition to determine whether a

5

prima facie showing has been made that the petitioner is entitled to relief. [Citation.] 'If the petition and record in the case establish conclusively that the defendant is ineligible for relief, the trial court may dismiss the petition. [Citations.]' [Citation.] Otherwise, the court must issue an order to show cause [citation] and hold an evidentiary hearing at which the prosecution bears the burden 'to prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder' under the law as amended by Senate Bill 1437 [citation]." (*People v. Wilson* (2023) 14 Cal.5th 839, 869, fn. omitted.)

The court may deny a section 1172.6 petition at the prima facie stage only if the petitioner is ineligible for relief as a matter of law. (*People v. Lewis* (2021) 11 Cal.5th 952, 966 (*Lewis*).) In determining whether a petitioner has made a prima facie case, the court may consider the record of conviction. (*Id*. at p. 970.) As our Supreme Court has explained: "The record of conviction will necessarily inform the trial court's prima facie inquiry under section [1172.6], allowing the court to distinguish petitions with potential merit from those that are clearly meritless." (*Id*. at p. 971.) For example, the record of conviction may show that a petitioner is ineligible for relief because he or she was convicted based on a theory of murder liability that remains valid despite the changes to the felony-murder law. (*People v. Verdugo* (2020) 44 Cal.App.5th 320, 330, review granted Mar. 18, 2020, S260493, and dismissed and remanded; see *People v. Garcia* (2022) 82 Cal.App.5th 956, 966 (*Garcia*).)

Although the court may look to the record of conviction, the prima facie inquiry remains limited. (*Lewis, supra*, 11 Cal.5th at p. 971.) In reviewing the record of conviction, the court should not engage in factfinding involving the weighing of evidence or the exercise of discretion. (*Id*. at p. 972.) The court should not reject the petitioner's factual allegations on credibility grounds unless the record of conviction conclusively refutes them as a matter of law. (*Id*. at pp. 971-972; *People v. Lopez* (2022) 78 Cal.App.5th 1, 14; *People v. Lopez* (2023) 88 Cal.App.5th 566, 576.)

Whether a trial court has properly denied a petition for resentencing at the prima facie stage is a question of law that is reviewed de novo. (*People v. Ervin* (2021) 72 Cal.App.5th 90, 101.)

DISCUSSION

Defendant contends that the resentencing court erred by relying upon factual findings made by the original trial judge to support its conclusion that defendant was the actual killer and therefore ineligible for relief under section 1172.6. Defendant argues that such findings were "extraneous" to the judgment and therefore not part of the record of conviction upon which the resentencing court could rely. Defendant contends that by relying on such findings the resentencing court committed prejudicial error and violated his constitutional rights to due process and equal protection.

As a threshold matter, we address the People's contention that defendant forfeited this argument by failing to raise it below. Although we agree defense counsel failed to preserve this issue for appeal, we nevertheless exercise our discretion to reach the merits to eliminate the need to address defendant's alternative claim of ineffective assistance of counsel. (*In re Victor L.* (2010) 182 Cal.App.4th 902, 928; *People v. Cervantes* (2020) 55 Cal.App.5th 927, 937; *People v. Williams* (1998) 17 Cal.4th 148, 161, fn. 6.)

Turning to the merits, we conclude that the judge's factual findings *are* part of the record of conviction, and therefore find no error in the resentencing court's reliance upon them.

We begin by reiterating that because the parties consented to waive trial by jury, defendant was convicted after a bench trial. In a bench trial, the judge acts as the finder of the facts and the law. At the conclusion of a bench trial, the judge does not render a "verdict," but rather announces his or her "findings upon the issues of fact." (§§ 689, 1167; *People v. Seneca Ins. Co.* (2003) 29 Cal.4th 954, 958.) The judge then pronounces judgment based on those findings. (§§ 1191, 1202.)

7

Here, at the conclusion of defendant's bench trial, the judge specifically found that defendant personally and intentionally discharged a firearm causing Adam Todd's death. This finding, which tracks the language of the firearm enhancement alleged in the information, was not "extraneous" or "superfluous" to charged offenses. (*People v. Costello* (1963) 223 Cal.App.2d 748, 754 [the verdict is construed with the information or indictment].) Thus, it was part of the record of conviction.

Under the circumstances of this single-victim homicide, the finding that defendant personally and intentionally discharged a firearm causing the victim's death unequivocally establishes that defendant was the actual killer. (*People v. Cornelius* (2020) 44 Cal.App.5th 54, 58, review granted Mar. 18, 2020, S260410, and review dismissed and case ordered non-citable and nonprecedential to the extent it is inconsistent with *Lewis, supra*, 11 Cal.5th 952.) And, as the actual killer, defendant is ineligible for relief under section 1172.6 as a matter of law. (*Garcia, supra*, 82 Cal.App.5th at p. 973.) Accordingly, even if defendant could show the resentencing court otherwise engaged in some type of improper factfinding, any error was harmless because the record of conviction conclusively establishes that defendant is ineligible for resentencing under section 1172.6 as a matter of law. (*People v. Flores* (2022) 76 Cal.App.5th 974, 986; *People v. Epps* (2001) 25 Cal.4th 19, 29.)

Defendant relies on *People v. Offley* (2020) 48 Cal.App.5th 588 to argue that a true finding under section 12022.53, subdivision (d) does not itself preclude eligibility for resentencing under section 1172.6. But *Offley* is not on point. The issue in that case was whether an enhancement under section 12022.53, subdivision (d) precludes resentencing relief because it shows the defendant acted with malice aforethought. (*Offley, supra*, 48 Cal.App.5th at p. 597.) The appellate court held that because an enhancement under section 12022.53, subdivision (d) does not establish that the defendant acted with malice aforethought, the existence of such an enhancement does not establish that the defendant is ineligible for relief as a matter of law. (*Offley*, at pp. 598-599.)

8

Here, in contrast, the finding is not being used to show defendant acted with malice, but to show he was the actual killer because he personally shot and killed Adam Todd. Even as amended by Senate Bill 1437, the felony-murder rule permits a murder conviction without malice for a person who was the actual killer. (§§ 188, subd. (a)(3), 189, subd. (e)(1); *Garcia, supra*, 82 Cal.App.5th at pp. 967-968.) Thus, *Offley* has no application here.

We are similarly unpersuaded by defendant's constitutional claims. Nothing defendant argues persuades us that his constitutional rights to due process or equal protection were violated when the original trial judge made the findings at the conclusion of his bench trial, or when the resentencing court relied upon the record of conviction to deny him relief under section 1172.6. (See *People v. Njoku* (2023) 95 Cal.App.5th 27, 33; *People v. Myles* (2021) 69 Cal.App.5th 688, 705.)

## DISPOSITION

The order denying the petition for resentencing is affirmed.

_____\s\_____,
Krause, J.

We concur:

_____\s\_____,
Robie, Acting P. J.

_____\s\_____,
Boulware Eurie, J.

9